WHIRLPOOL CORPORATION, Plaintiff v. DAILEY CONSTRUCTION, INC.; W. C. DAILEY and DAILEY INVESTMENTS, INC., Individually and as General Partners for BRAEHILL WAY LIMITED PARTNERSHIP; BRAEHILL WAY LIMITED PARTNERSHIP; and FIRST UNION NATIONAL BANK OF SOUTH CAROLINA, Defendants

No. 9221SC424

(Filed 1 June 1993)

**Uniform Commercial Code § 43 (NCI3d) — appliances incorporated into apartment project — security agreement — authorization of sale — termination of security interest upon sale of project**

Where plaintiff sold various kitchen appliances to defendant contractor for incorporation into an apartment project, and plaintiff retained a security interest in the appliances, language in the security agreement providing that the contractor represented "that the products sold hereunder that are designated for use in or delivery to a specified building site will be used only at that site, and will be resold only as a part of the building project or a unit thereof" constituted at least an implied authorization by plaintiff for the appliances to be sold as part of the apartment project, and plaintiff's security interest in the appliances was terminated under N.C.G.S. § 25-9-306(2) when the contractor sold the apartment complex, including the appliances, to the developer. The fact that the same individual served as president of defendant contractor and general manager of the developer does not permit the existence of separate business entities to be disregarded in this case.

**Am Jur 2d, Secured Transactions § 269.**

Appeal by plaintiff from order and judgment entered 27 January 1992 by Joseph R. John, Sr. in Forsyth County Superior Court. Heard in the Court of Appeals 31 March 1993.

*Tuggle Duggins & Meschan, P.A., by Thomas S. Thornton and Jonathan S. Dills, for plaintiff-appellant.*

*Bell, Davis & Pitt, P.A., by D. Anderson Carmen, for defendant Braehill Way Limited Partnership.*

*Carruthers & Roth, P.A., by Kenneth L. Jones, for defendant First Union National Bank of South Carolina.*

LEWIS, Judge.

The issue presented by this appeal arises out of a security agreement between Dailey Construction, Inc. ("Dailey Construction") and Whirlpool Corporation ("Whirlpool"). On 11 January 1990, Whirlpool sold various kitchen appliances to Dailey Construction for incorporation into the Glen Eagles Apartment project in Winston-Salem. As part of the agreement, Whirlpool retained a security interest in the appliances, which it properly filed and perfected.

Prior to the execution of the security agreement between Dailey Construction and Whirlpool, Dailey Construction had entered into a construction contract with Braehill Way Limited Partnership ("Braehill") to construct the Glen Eagles Apartments. Dailey Construction was to be the general contractor for the project and obtained a construction loan from First Union National Bank of South Carolina ("First Union") in June of 1989. As security for the construction loan, First Union took a security interest in the property, improvements and all personal property relating to the project. As per the terms of the construction contract, Dailey Construction sold the Glen Eagles Apartments to Braehill when construction was completed and a portion of the money paid to Dailey Construction represented the cost of the appliances installed in the apartments. Braehill and First Union claim that Whirlpool lost its security interest in the appliances because Whirlpool authorized the sale as per N.C.G.S. § 25-9-306(2). This matter came before the trial court on 13 January 1992 on cross-motions for summary judgment. The trial court granted summary judgment in favor of Braehill and First Union, and Whirlpool has appealed.

The only significant issue presented by this appeal is whether Whirlpool's security interest in the appliances was terminated as a result of the sale of the appliances to Braehill. On the facts of this case we hold that Whirlpool's security interest was terminated, but we are troubled by the manner in which it was done. At all times pertinent to this appeal, W.C. Dailey was the president of Dailey Construction. In addition, the same W.C. Dailey was the only noncorporate general partner of Braehill. As a result the sale from Dailey Construction to Braehill, which ultimately terminated Whirlpool's security interest, was conducted by W.C. Dailey in his representative capacity on behalf of both Dailey Construction and Braehill.

As a general rule, a security interest is effective against subsequent purchasers. N.C.G.S. § 25-9-201 (1986). However this rule is not without exception. The two exceptions which are most applicable to the facts of this case are contained in N.C.G.S. § 25-9-306(2) and § 25-9-307(1). Braehill and First Union claim that § 25-9-306(2) is applicable because Whirlpool authorized the sale of the appliances. The specific language of § 25-9-306(2) provides:

> Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, . . . .

Whirlpool denies ever authorizing the sale of the appliances and says that § 25-9-307(1) is the only other section that could apply to this case. Section 25-9-307(1) provides:

> A buyer in the ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

The definition of a buyer in the ordinary course of business is in turn provided by N.C.G.S. § 25-1-201(9) and states:

> "Buyer in the ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind. . . .

The essence of Whirlpool's argument is that since W.C. Dailey represented both Dailey Construction and Braehill in the sale of the appliances, then it was impossible for Braehill to have taken in good faith and without knowledge of Whirlpool's security interest. Thus, according to Whirlpool's argument, neither § 25-9-306(2) nor § 25-9-307(1) are applicable and the general rule of § 25-9-201 applies. Although this is a compelling argument, we do not agree.

By definition, § 25-9-306 applies rather than § 25-9-307 when the sale of collateral is authorized. 9 Anderson, *Uniform Commercial Code*, § 9-306:42 (3d ed. 1985). Since the issue of whether Whirlpool authorized the sale to Braehill is so sharply disputed, we address this issue first, because if Whirlpool authorized the

WHIRLPOOL CORP. v. DAILEY CONSTRUCTION, INC.

[110 N.C. App. 468 (1993)]

sale of the appliances then Braehill acquired title free of Whirlpool's security interest regardless of Braehill's status as a buyer in the ordinary course as that term is defined in § 25-1-201(9). *See Finance America Commercial Corp. v. Econo Coach, Inc.*, 454 N.E.2d 1127 (Ill. App. 2d Dist. 1983). The answer to whether or not a creditor has authorized the transfer of collateral may be found either by express consent, by implication, or by a course of conduct expressing consent. 9 Anderson, *Uniform Commercial Code*, § 9-306:44 (3d ed. 1985). Both Braehill and First Union claim that Whirlpool expressly consented to the transfer of the appliances by the specific language used in the security agreement. The language upon which Braehill and First Union rely is contained in paragraph 10 of the security agreement and states:

> Buyer's Representation. The Buyer represents that the products sold hereunder that are designated for use in or delivery to a specified building site will be used only at that site, and will be resold only as a part of the building project or a unit thereof.

Given that a security agreement is essentially a contract between the creditor and the debtor, we believe that the issue in this case is one of contract interpretation as to whether the above quoted language amounts to an authorization of sale.

The rules of contract interpretation are well established. When the language of a contract is plain and unambiguous then construction of the agreement is a matter of law for the court. *Chavis v. Southern Life Ins. Co.*, 76 N.C. App. 481, 333 S.E.2d 559 (1985), *aff'd*, 318 N.C. 259, 347 S.E.2d 425 (1986). However if the terms of the contract are ambiguous then resort to extrinsic evidence is necessary and the question is one for the jury. *Cleland v. Children's Home, Inc.*, 64 N.C. App. 153, 306 S.E.2d 587 (1983). Having reviewed the security agreement, we believe that the language of paragraph 10 is clear and unambiguous. A fair reading of paragraph 10 leaves no doubt that both Whirlpool and Dailey Construction knew that the appliances were to be incorporated into the Glen Eagles Apartment project and then resold as part of the project. It is clear that Whirlpool, if not expressly, then at least impliedly consented to the resale. Such a result is mandated not only by the terms of the security agreement, but also by logic because unless the appliances were resold as part of the apartment project,

WHIRLPOOL CORP. v. DAILEY CONSTRUCTION, INC.

[110 N.C. App. 468 (1993)]

Dailey Construction did not stand to profit from the project and would have been unable to repay Whirlpool.

In reaching our decision we are guided by an opinion of the Virginia Supreme Court in a similar case. In *Graves Constr. Co. v. Rockingham Nat'l Bank*, 263 S.E.2d 408 (Va. 1980), a local school board contracted to have a school built. The electrical subcontractor in the case was authorized by its secured creditor to sell its collateral in the ordinary course of business. After the electrical subcontractor defaulted on its obligation, the secured creditor attempted to take possession of the electrical subcontractor's wiring and materials stored on the job site, and the general contractor objected. The Virginia Supreme Court held that since the general contractor had paid the electrical subcontractor on a monthly basis that title to the materials had passed to the general contractor regardless of the secured creditor's security interest. Supplying the rationale for its decision, the Virginia Supreme Court stated that the incorporation of the electrical subcontractor's inventory into the school building was the type of sale authorized within the language of the security agreement. For the same reasons, we feel that Dailey Construction, in the course of its business, incorporated its materials into the Glen Eagles Apartments and this is exactly what Whirlpool authorized in the security agreement.

In conclusion, we must state that we are disturbed by the fact that W.C. Dailey played such an integral part in the transaction for both Dailey Construction and Braehill. However, just because W.C. Dailey was the president of Dailey Construction and the general manager of Braehill, does not allow us to disregard the existence of separate business entities. *See Sprouse v. North River Ins. Co.*, 81 N.C. App. 311, 344 S.E.2d 555 (1986). Had evidence of bad faith been presented as to this issue, or if other equitable factors had been produced which would have allowed us to disregard the separate business status of Dailey Construction and Braehill, then we may have reached a different result. However, on the facts of this case we must give due regard to the corporate formalities that are in place and without more we cannot say that bad faith existed. The order of the trial court is

Affirmed.

Chief Judge ARNOLD and Judge COZORT concur.