IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-596

Filed: 17 January 2017

Orange County, No. 15 CVD 1471

RME MANAGEMENT, LLC, Plaintiff,

v.

CHAPEL H.O.M. ASSOCIATES, LLC and CHAPEL HILL MOTEL ENTERPRISES, INC., Defendants.

Appeal by plaintiff from order entered 7 March 2016 by Judge Lunsford Long in Orange County District Court. Heard in the Court of Appeals 3 November 2016.

> *Hedrick Gardner Kincheloe & Garofalo, LLP, by Patricia P. Shields and James R. Baker, for plaintiff-appellant.*
>
> *Troutman Sanders LLP, by Ashley H. Story and D. Kyle Deak, for defendants-appellees.*

ZACHARY, Judge.

Plaintiff RME Management, LLC (RME) appeals an order granting summary judgment in favor of Defendants Chapel H.O.M. Associates, LLC (HOM) and Chapel Hill Motel Enterprises, Inc. (CHME). For the reasons that follow, we affirm.

## I. Background

RME and HOM are the assignees of the lessor and the lessee, respectively, of real property located at 1301 Fordham Boulevard in Chapel Hill, North Carolina (the property). The lease was executed on 17 March 1966, and shortly thereafter, the

original lessee built a hotel on the property, which is still in operation today. In January 1967, CHME entered into a sublease to operate the hotel. The lease and sublease were assigned to HOM in August 1988. RME became the owner and current lessor of the property in October 2012.

The lease's initial term commenced on 1 January 1966 and was scheduled to terminate on 31 December 2015. However, the lease contained a renewal option that allowed HOM to extend the lease for an additional forty-nine years. HOM exercised the renewal option in September 2014, and the additional forty-nine-year lease term was set to commence on 1 January 2016.

Central to this case, the lease contained two provisions that required HOM, as lessee, to pay taxes assessed against the property. Paragraph 17 of the lease provides, in pertinent part:

> As a further rental hereunder, the Lessee shall pay all ad valorem and personal property taxes which may be assessed against the demised premises and the improvements thereon and personal property located therein, or any part thereof, for each year of the term of this lease. . . .

Paragraph 19 further provides that:

> The Lessee expressly agrees to pay all installments of taxes and assessments required to be paid by it hereunder *when due*, subject to the right of said Lessee to contest such tax or assessment, in good faith, provided the title of the Lessors shall not be placed in jeopardy by forfeiture, foreclosure, sale under tax warrant, or otherwise.

(Emphasis added). Although HOM's obligation to pay property taxes is clear, the lease does not define the term "when due" as it relates to the date by which the taxes must be paid. The lease also contains a default provision:

> If any default of the Lessee hereunder shall continue uncorrected for thirty (30) days after notice thereof from the Lessors, the Lessors may, by giving written notice to the Lessee, at any time thereafter during the continuance of such default either (a) terminate the lease, or (b) re-enter the demised premises by summary process or otherwise, and expel the Lessee and remove all personal property therefrom and re-let the premises at the best rent obtainable. . . .

Property tax notifications and bills were mailed to CHME (which was obligated to pay property taxes, in full, under the sublease), and HOM appears to have relied on CHME to make all necessary payments. While the subject of considerable dispute on appeal, it appears that RME, HOM, and their predecessors never gave much, if any, attention to when the property taxes were being paid before 2013.

On 23 October 2013, however, RME's attorney, Jonathan Ganz, sent a letter to defendants alleging that they had breached the lease by failing to pay property taxes on or before September 1st in each of the preceding four years. The letter stated that RME had just recently become aware of these circumstances, and further asserted that "[i]n Orange County, real property tax bills for a calendar year are due on September 1 of that year." HOM responded, through its attorney, by sending a letter to RME, asserting that the lease did not require the tenant to pay taxes by September

1st of any fiscal year. Despite the parties' contrary positions on the issue of exactly when property tax payments were to be made, RME took no further action at that time, as Mr. Ganz's letter failed to comply with the technical requirements of the lease's notice and default provisions.

There was no dispute in 2014 as to when the property taxes had to be paid, as CHME appealed the property's valuation, thereby tolling the date on which the taxes were "due" under the lease. However, the 2015 tax bill for the property was issued in July 2015 and defendants did not pay the taxes by 1 September 2015. As a result, on 21 September 2015, RME sent HOM a notice of default "for failure to pay all taxes as required pursuant to the lease." HOM responded as follows in a letter dated 16 October 2016:

> This letter is sent in response to your letter dated September 21, 2015 which wrongfully alleges a default under the Lease. We specifically deny that a default exists for failure to pay all taxes as required under the Lease.
>
> Pursuant to N.C.G.S. § 105-360, 2015 real property taxes are payable without interest through January 5, 2016. Real property taxes are not delinquent, and interest does not begin to accrue until January 6, 2016. As such, there exists no delinquency in the payment of real property taxes and no default under the terms of the Lease.

For whatever reason, defendants chose not to pay the property tax bill immediately, an action that would have cured the alleged default. Consequently, RME sent HOM a written notice that the lease had been terminated and instructed HOM and CHME

to vacate the premises.

The notice of termination was dated 27 October 2015, the same day that RME filed a summary ejectment action against defendants in the Small Claims Division of Orange County District Court. RME paid the taxes on the morning of 3 November 2015. Later that same day, Federal Express delivered a tax payment from CHME to the Orange County Tax Administrator's Revenue Division. Thereafter, HOM tried to tender the amount of the 2015 tax payment to RME on two occasions, but RME refused to accept reimbursement.

The complaint seeking summary ejectment was dismissed by an Orange County Magistrate on 10 November 2015. RME noted an appeal to Orange County District Court on 18 November 2015, and also filed a motion for summary judgment. After conducting a hearing on the matter, the trial court denied RME's motion for summary judgment and granted summary judgment in favor of defendants. The trial court's order held:

> Here, the course of dealing clearly shows that the parties historically did not construe the lease to require that the taxes be paid by midnight on September 1 each year; they understood the terms "pay" and "pay when due" to have been used in their ordinary sense, rather than within the technical, literal definitional requirements of N.C. Gen. Stat. § 105-360.
>
> The ordinary meaning of "pay" and "pay when due" customarily includes an implicit grace period during which payment can be made without being overdue; few obligations, and certainly not property taxes, are expected

> to be paid on the very first day they become due.
>
> The taxes were paid during the implicit grace period which the lease afforded, given the ordinary meaning of the terms used, and in light of the course of dealing.
>
> Accordingly, there is no genuine issue as to any material fact, Defendants are entitled to judgment as a matter of law, Plaintiff's motion for summary should be denied, and summary judgment should be entered for Defendants[.]

RME appeals.

## II. Analysis

RME's principal arguments on appeal are that the trial court erred in denying its summary judgment motion and in granting summary judgment in favor of defendants. We disagree.

### A. Standard of Review

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). "In ruling on a motion for summary judgment the evidence is viewed in the light most favorable to the non-moving party." *Hinson v. Hinson*, 80 N.C. App. 561, 563, 343 S.E.2d 266, 268 (1986) (citation omitted). "A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing

through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense." *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 345 (2003) (citation and internal quotation marks omitted). "A trial court may enter summary judgment in a contract dispute if the provision at issue is not ambiguous and there are no issues of material fact." *Malone v. Barnette*, __ N.C. App. __, __, 772 S.E.2d 256, 259 (2015) (citing *Metcalf v. Black Dog Realty, LLC*, 200 N.C. App. 619, 633, 684 S.E.2d 709, 719 (2009) ("[W]hen the language of a contract is not ambiguous, no factual issue appears and only a question of law which is appropriate for summary judgment is presented to the court."), and other citation omitted). Furthermore, if a grant of "summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

B. "When Due"

RME argues that the trial court improperly denied its motion for summary judgment on the summary ejectment claim and that that the court erred in granting summary judgment in favor of defendants. More specifically, RME contends that Paragraph 19 of the lease, which states that taxes must be paid "when due," required defendants to pay the taxes immediately on 1 September 2015. RME's argument, as we understand it, is that because tax payments became "due" under N.C. Gen. Stat.

§ 105-360 on September 1st, any payment made after that date was late, or "past due," such that RME was entitled to send a notice of default and terminate the lease. In contrast, defendants argue that because the taxes first became due on September 1st and were not delinquent until January 6th, the taxes were "due," i.e., payable, at any time from September 1st to January 5th (of the following year). We agree with defendants.

"A lease is a contract which contains both property rights and contractual rights." *Strader v. Sunstates Corp.*, 129 N.C. App. 562, 570, 500 S.E.2d 752, 756 (citation omitted), *disc. review denied*, 349 N.C. 240, 514 S.E.2d 274 (1998). The provisions of a lease are, therefore, interpreted according to general principles of contract law. *Martin v. Ray Lackey Enters., Inc.*, 100 N.C. App. 349, 354, 396 S.E.2d 327, 330 (1990).

"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA, Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) (citing *Lane v. Scarborough*, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973)). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) (citation omitted). "When the language of a contract is plain and unambiguous then construction of the agreement is a matter of law for the court." *Whirlpool Corp.*

*v. Dailey Constr., Inc.*, 110 N.C. App. 468, 471, 429 S.E.2d 748, 751 (1993). In such a case, " 'the court may not ignore or delete any of [the contract's] provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms.' " *Hemric v. Groce*, 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (quoting *Martin v. Martin*, 26 N.C. App. 506, 508, 216 S.E.2d 456, 457-58 (1975)), *cert. denied*, 359 N.C. 631, 616 S.E.2d 234 (2005).

If the contract's terms are ambiguous, however, "then resort to extrinsic evidence is necessary and the question is one for the jury." *Whirlpool Corp.*, 110 N.C. App. at 471, 429 S.E.2d at 751 (citation omitted). Even so, "ambiguity . . . is not established by the mere fact that [one party] makes a claim based upon a construction of its language which the [other party] asserts is not its meaning." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). Instead, "[a]n ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Holshouser v. Shaner Hotel Grp. Props. One Ltd. P'ship*, 134 N.C. App. 391, 397, 518 S.E.2d 17, 23 (1999), *aff'd per curiam*, 351 N.C. 330, 524 S.E.2d 568 (2000) (citations and internal quotation marks omitted).

An additional principle of contract construction is that "parties are generally presumed to take into account all existing laws when entering into a contract." *Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 406, 584 S.E.2d 731, 739 (2003)

(citation omitted). "When the language of a statute is clear and without ambiguity, 'there is no room for judicial construction,' and the statute must be given effect in accordance with its plain and definite meaning." *AVCO Fin. Servs. v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (citation omitted). Mindful that our central task is to interpret the parties' intent "at the moment of [the lease's] execution," *Philip Morris USA, Inc.*, 359 N.C. at 773, 618 S.E.2d at 225, we first note that the relevant statute—in terms of intent—is the one that was in effect in 1966, N.C. Gen. Stat. § 105-345 (1965).[1] However, there is no material difference between the 1965-version of section 105-345 and its successor, N.C. Gen. Stat. § 105-360(a) (2015), which provides:

> Taxes levied under this Subchapter by a taxing unit are *due and payable* on September 1 of the fiscal year for which the taxes are levied. Taxes are payable at par or face amount if paid before January 6 following the due date. Taxes paid on or after January 6 following the due date are subject to interest charges. Interest accrues on taxes paid on or after January 6 as follows. . . .

(emphasis added). Therefore, we base our analysis, as have the parties, on the language contained in section 105-360. Here, we must interpret the phrase "when due" in relation to defendants' obligation to pay property taxes under Paragraph 19 of the lease and section 105-360. More precisely, the issue presented is whether a

---

[1] Section 105-345 provided that all property taxes were "due and payable on the first Monday of October in which they [were] . . . assessed or levied." It also provided that if tax payments were made in cash "[a]fter the first day of November and on or before the first day of February next after due and payable, the tax shall be paid at par or face value." N.C. Gen. Stat. § 105-345(2) (1965).

lessee fails to perform its obligation when property taxes are not paid at the moment they become due when a lease requires the lessee to pay taxes "when due." No appellate decisions in North Carolina have addressed this exact question, but the Court of Appeals of Michigan has confronted the issue.

In *Roseborough v. Empire of America*, the plaintiffs claimed that the defendant bank had failed to pay the real estate taxes in a timely manner, as required by the parties' mortgage agreement. 168 Mich. App. 92, 93, 423 N.W.2d 578, 579 (1987) (per curiam). The plaintiffs contended that the bank's agreement to pay the taxes "when due" required payment of the 1984 taxes on 1 December 1984, the date on which property tax collection commenced and the amounts assessed became a lien on the property. *Id.* at 95, 423 N.W.2d at 579. As a result, the *Roseborough* Court had to interpret the mortgage contract language "when due" in relation to the obligation to pay property taxes under the law. *Id.* The Court held that "when due" meant when payable, which under Michigan law was a period commencing December 1st and ending at the point that the tax bill became delinquent on the following February 15th. *Id.* at 95-96, 423 N.W.2d at 579. Accordingly, the taxes were "due," in the sense of being payable, at any time between December 1st and February 15th, not just on December 1st.

Although clearly not controlling, we find the reasoning in *Roseborough* compelling, and we apply it to the circumstances of this case. The effect of the

interpretation that RME urges us to adopt is as follows: the lease required defendant to pay the taxes at the moment they first became "due." Under this interpretation, defendants could only meet their obligation by paying the property taxes on, and only on, September 1st. In other words, any payment before September 1st would be "early," any payment on September 1st would be "when due," and any payment after September 1st would be late, or past the point "when" the payments were "due." This is a nonsensical, hyper-technical construction of the lease and North Carolina property tax law.

Indeed, after noting that the first sentence of section 105-360 provides that property taxes are "due and payable on September 1," and that the second sentence provides that property taxes are "payable" without interest "if paid before January 6 following the due date," RME argues that "[d]efendants' statement that taxes are 'due and payable through January 5' inserts the phrase 'and payable' into the second sentence of the statute." But there is no meaningful distinction between the terms due and payable. As recognized by one of America's leading legal lexicographers, "[b]ecause a debt cannot be *due* without also being *payable*, the doublet *due* and *payable* is unnecessary in place of *due*." Bryan A. Gardner, *A Dictionary of Modern Legal Usage* 299 (2d ed. 1995). Just because taxes first become due on September 1st does not mean that they become past due on the following day. Instead, property taxes in North Carolina are "due" (i.e., payable) over a period of time (September 1st

through the following January 5th) and not on any single date. The use of the phrase "when due," without qualifying language, must be given its plain meaning, and its plain meaning is, when applied to section 105-360, the period of time between the first and last dates for timely payment of those taxes (September 1st and January 5th, respectively). As noted in *Roseborough*, "Plaintiffs' argument would have more force if the . . . agreement contained qualifying language such as 'when first become due' or 'at the moment taxes become due.'" 168 Mich. App. at 95-96, 423 N.W.2d at 579. Such qualifying language is absent from the lease in the instant case. Accordingly, we reject RME's interpretation of the phrase "when due" as it relates to HOM's obligation to pay property taxes under the lease.

Application of section 105-360 to the lease's terms reveals that taxes on the property first become due on September 1st, but they do not become past due or delinquent until the following January 6th. Because the plain meaning of "when due" refers to the period running from September 1st to January 5th, we conclude that Paragraph 19 of the lease is not ambiguous. When RME sent notice of termination in October 2015 and paid the property taxes in November 2015, RME deprived HOM of the opportunity to meet its obligation to pay (or direct CHME to pay) the taxes on or before 5 January 2016. The trial court, therefore, properly concluded that no genuine issue of material fact remained, that RME's motion for summary judgment should be denied, and that summary judgment should be entered in favor of

defendants. As our decision results solely from our interpretation of Paragraph 19's plain language, we need not address whether the trial court properly considered evidence of the parties' prior course of dealing. *See Shore*, 324 N.C. at 428, 378 S.E.2d at 779 ("If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered.").

### III. Conclusion

For the reasons stated above, we affirm the trial court's order denying RME's motion for summary judgment and granting summary judgment in favor of defendants.

AFFIRMED.

Judges STROUD and McCULLOUGH concur.