Local Social, Inc. v. Stallings, 2018 NCBC 41.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 1889

LOCAL SOCIAL, INC. and LYNELL I. EADDY,

        Plaintiffs,

v.

SEAN STALLINGS,

        Defendant.

**ORDER AND OPINION ON DEFENDANT'S MOTION TO ENFORCE MEDIATED SETTLEMENT AGREEMENT**

1.    **THIS MATTER** is before the Court on Defendant's Motion to Enforce Mediated Settlement Agreement (the "Motion"). For the reasons set forth below, the Court **DENIES** the Motion.

*Ward and Smith, P.A., by Gary J. Rickner and Marla S. Bowman, for Plaintiff Local Social, Inc.*

*Ellis & Winters LLP, by Kelly M. Dagger, for Plaintiff Lynell I. Eaddy.*

*Adams, Howell, Sizemore & Lenfestey, P.A., by Ryan J. Adams, for Defendant.*

Robinson, Judge.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

2.    This litigation arises out of a number of disputes between Plaintiff Lynell I. Eaddy ("Eaddy") and Defendant Sean Stallings ("Stallings" or "Defendant"). In 2014, Eaddy sold a fifty percent interest in Plaintiff Local Social, Inc. ("Local Social") to Stallings. Stallings paid for Eaddy's stock by executing and delivering to Eaddy a promissory note made payable to Eaddy for the amount of the purchase price, which

was secured by a security interest in the purchased stock. At some point after Stallings became a shareholder, the relationship between Eaddy and Stallings deteriorated. Plaintiffs allege that Stallings engaged in an array of misconduct—including using Local Social's credit card for personal expenses totaling approximately $146,736 (the "Disputed Expenses")—which led Plaintiffs to remove Stallings as president, terminate his employment, and initiate this litigation on February 16, 2017 seeking monetary and equitable relief on claims for breach of fiduciary duty and constructive fraud, conversion and misappropriation, breach of the Exit Plan and Agreement (the "Exit Agreement"), breach of the Agreement of Shareholders (the "Shareholders Agreement"), constructive trust, accounting, computer trespass, unfair and deceptive trade practices, punitive damages, enforcement of a promissory note, and judicial enforcement of a security interest. (Verified Compl. 12–17, 19–21, ECF No. 1.)

3. Defendant responds that the Disputed Expenses were proper business expenses incurred by him and other employees on behalf of Local Social, which classified the Disputed Expenses as a "loan to [Stallings]" on its 2016 balance sheet as an accommodation to complete its 2016 tax return. (Second Aff. Sean Stallings ¶ 5, ECF No. 41 ["Stallings Aff."].) On April 24, 2017, Defendant filed his answer and counterclaims for breach of the Exit Agreement, breach of the Shareholders Agreement, breach of the Amended and Restated Bylaws, violation of the North Carolina Wage and Hour Act, and conversion. (Answer & Countercls. 16–19, ECF No. 8.)

4.     This action was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated February 16, 2017, (ECF No. 3), and assigned to the undersigned by order of the Chief Business Court Judge dated February 17, 2017, (ECF No. 4).

5.     The parties participated in a mediated settlement conference on December 18, 2017, at the end of which they executed a Memorandum of Settlement (the "Memorandum") reflecting their agreement to resolve this litigation.  (Stallings Aff. ¶ 6.)  The following day, on December 19, 2017, the parties filed the Report of Mediator, which indicated that the parties had reached an agreement on all issues. (ECF No. 39.)

6.     Paragraphs 2 and 3(a) of the Memorandum provide that Plaintiffs shall pay Defendant the total sum of $200,000, which shall be paid as follows: "(i) $90,000.00 cash within 60 days of this [Memorandum] plus (ii) $27,500.00 each year on the anniversary of this [Memorandum] each year [sic] for 4 years (no interest)[.]" (Stallings Aff. Ex. A, ¶¶ 2−3(a).)  The $27,500 payments are to be secured by a confession of judgment in the total amount of $110,000 in favor of Defendant against Plaintiffs.  (Stallings Aff. Ex. A, ¶ 3(b).)  The fully executed confession of judgment is to be delivered to, and held by, Defendant's attorney pending Plaintiffs' compliance with their obligation to pay $27,500 each year for four years.  (Stallings Aff. Ex. A, ¶ 3(b)(i).)

7.     Paragraph 3(c) of the Memorandum states:

> There shall be a settlement agreement that contains the following provisions: (i) There shall be a mutual release of all claims between

Plaintiff[s] and Defendant that shall provide that Plaintiff[s] release[] all claims against Defendant that exist as of its time of execution, including, but not limited to, the Note and Security Agreement executed by Defendant in favor of [Eaddy] in consideration for the sale by [Eaddy] of 50% of the stock of Local Social, Inc. to Defendant; and that provides that Defendant releases all claims against Plaintiff[s] as of its time of execution; provided, however, the existing covenant not to compete preventing Defendant from competing with Local Social, Inc. shall remain in full force and effect for 2 years from December 31, 2017 which is the date that the termination of Defendant's status as a stockholder in and member of the Board of Directors of Local Social, Inc. shall become effective; (ii) There shall be a mutual confidentiality and non-disparagement agreement; (iii) The Defendant's stock interest in Local Social, Inc. shall terminate effective December 31, 2017 subject to the condition that Plaintiff[s] make[] the require [sic] $90,000.00 payment within 60 days of this [Memorandum]; and (iv) Each party shall pay his, her or its own costs and attorneys [sic] fees, except that Local Social, Inc. shall pay all the mediator's fees and expenses[.]

(Stallings Aff. Ex. A, ¶ 3(c).)

8.      Paragraph 3(d) of the Memorandum obligates the parties to file a mutual stipulation of dismissal with prejudice of all claims in this action.  (Stallings Aff. Ex. A, ¶ 3(d).)   Pursuant to paragraph 3(e), the confession of judgment, settlement agreement, and stipulation of dismissal "shall be delivered to the respective parties when the $90,000.00 payment is timely made[.]"  (Stallings Aff. Ex. A, ¶ 3(e).)

9.      The parties' dispute arises out of paragraph 3(f), which states that Plaintiffs

agree[] to work in good faith with Local Social, Inc.'s accounting firm to recharacterize [sic] the item marked "loan to [Stallings]" on the 2016 Local Social, Inc. balance sheet: (i) as an uncollectible debt on the 2017 taxes, (ii) as business expenses for the year 2016, requiring an amendment of the 2016 tax returns of Local Social, Inc., or (iii) some combination of the above, in increments recommended by Local Social, Inc.'s accountant.

(Stallings Aff. Ex. A, ¶ 3(f).)

10. Following the mediated settlement conference, Local Social consulted with multiple accountants whose recommendation was that all but $18,212.54 of the Disputed Expenses should be re-characterized as business expenses for the year 2016 and that Local Social's 2016 tax return should be amended to reflect the same. (Stallings Aff. ¶ 9.) On January 31, 2018, Local Social's counsel e-mailed Defendant's counsel a proposed reclassification of the Disputed Expenses indicating, in accordance with the accountants' recommendation, that there was approximately $18,000 that would remain non-deductible. (Stallings Aff. ¶ 9.) Defendant did not agree with this proposal as he believes that all of the Disputed Expenses are deductible business expenses. (Stallings Aff. ¶ 9.)

11. Thereafter, on February 11, 2018, Local Social's counsel e-mailed Defendant's counsel indicating that Local Social's accountant posited that Local Social should not amend its 2016 tax return; rather, Local Social should deduct approximately $43,671.03 of the Disputed Expenses on its 2017 tax return. (Stallings Aff. ¶ 10.) Again, Defendant did not agree with this proposal. (Stallings Aff. ¶ 10.)

12. At some point after the mediated settlement conference, Local Social's counsel contacted Lori Aveni ("Aveni"), a certified public accountant who provides bookkeeping services for Local Social, for her professional opinion on reclassifying the Disputed Expenses. (Br. Opp'n to Def.'s Mot. Enforce Settlement Agreement Ex. 1, ¶ 12, ECF No. 43.1 ["Eaddy Aff."]; Br. Opp'n Ex. 2, ¶ 6, ECF No. 43.2 ["Aveni Aff."].) On February 19, 2018, Aveni participated in a telephone call with Local Social's and

Defendant's counsel to discuss her recommendations as to reclassifying the Disputed Expenses. (Aveni Aff. ¶ 7.)

13. With respect to reclassifying the Disputed Expenses as an uncollectible debt on Local Social's 2017 tax return, Aveni advised counsel that 26 C.F.R. § 1.166-1, which requires that a debt be "bona fide" in order to qualify for bad-debt deduction, would most likely prohibit such reclassification because the Disputed Expenses could most probably not be considered a "bona fide" debt as there was no loan agreement or other documentation reflecting the loan, and the parties did not intend to make or receive a loan; rather, the Disputed Expenses were identified as a loan as an "accommodation" to permit completion of Local Social's 2016 tax return. (Aveni Aff. ¶ 7d.)

14. With respect to reclassifying the Disputed Expenses as business expenses for the year 2016, which Aveni indicated would require an amendment to Local Social's 2016 tax return, Aveni advised counsel that Local Social would need verifiable back-up documentation, which should consist of actual receipts as opposed to credit card statements, for each expense it sought to reclassify as a deductible business expense. (Aveni Aff. ¶ 7a; Eaddy Aff. ¶ 13.) Aveni further advised that, even if Local Social could obtain the necessary documentation to reclassify the Disputed Expenses as business expenses, an amendment to Local Social's 2016 tax return to reclassify the Disputed Expenses as deductible business expenses would create significant risk of an IRS audit. (Aveni Aff. ¶ 7b; Eaddy Aff. ¶ 14.) Aveni

opined that the financial risk of undergoing an audit outweighed the economic benefit to the shareholders of amending the 2016 return. (Aveni Aff. ¶ 7c; Eaddy Aff. ¶ 14.)

15. Defendant did not agree with Aveni's recommendations, (Eaddy Aff. ¶ 15), and filed the Motion on February 28, 2018, (ECF No. 40). In compliance with paragraph 3(c) of the Memorandum, all parties have executed a Settlement Agreement and Mutual Release (the "Settlement Agreement") embodying all the terms set forth in the Memorandum. (Stallings Aff. ¶ 13; Eaddy Aff. ¶ 16.) By agreement of counsel for the parties, Plaintiffs' counsel is holding in trust the initial $90,000 payment, which Plaintiffs were required to pay Defendant within sixty days of the Memorandum's execution, pending determination of the Disputed Expenses. (Stallings Aff. ¶ 14; Eaddy Aff. ¶ 16.)

## II. LEGAL STANDARD

16. "[A] party has two options in deciding how to specifically enforce the terms of the settlement agreement." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 708, 682 S.E.2d 726, 741 (2009) (quotation marks omitted). A party may "(1) take a voluntary dismissal of his original action and then institute a new action on the contract, or (2) seek to enforce the settlement agreement by petition or motion in the *original* action." *Estate of Barber v. Guilford Cty. Sheriff's Dep't*, 161 N.C. App. 658, 662, 589 S.E.2d 433, 436 (2003); *DeCristoforo v. Givens*, 2015 NCBC LEXIS 56, at *19 (N.C. Super. Ct. May 29, 2015). When a party seeks to enforce the settlement agreement by motion in the original action, the motion is treated as a motion for summary judgment.

*Hardin*, 199 N.C. App. at 694–95, 682 S.E.2d at 732–33; *Ray Lackey Enters., Inc. v. Vill. Inn Lakeside, Inc.*, 2016 NCBC LEXIS 9, at *7 (N.C. Super. Ct. Jan. 29, 2016).

17. "Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.'" *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835.

## III.    ANALYSIS

18. "[C]ompromise agreements, such as the mediated settlement agreement reached by the parties in this case, are governed by general principles of contract law." *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001). "Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005). Non-technical terms in a contract are to be given their ordinary meaning, unless the context indicates that the parties clearly intended another meaning. *Premier, Inc. v. Peterson*, 232 N.C. App. 601, 608, 755 S.E.2d 56, 61 (2014). When the language of a contract is plain and

unambiguous, the Court can determine the parties' intent as a matter of law. *42 E., LLC v. D.R. Horton, Inc.*, 218 N.C. App. 503, 513, 722 S.E.2d 1, 8 (2012). A plain and unambiguous contract must be interpreted as written. *RME Mgmt., LLC v. Chapel H.O.M. Assocs., LLC*, 795 S.E.2d 641, 645 (N.C. Ct. App. 2017). If a contract is ambiguous, however, interpretation of the contract is a question of fact for the jury. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012). An ambiguity exists when the effect of provisions is uncertain or capable of several reasonable interpretations. *Id.*

19. All parties agree that the Memorandum is a valid and enforceable contract. The parties disagree only as to the interpretation of paragraph 3(f). Defendant argues that paragraph 3(f) clearly and unambiguously requires Plaintiffs to reclassify the Disputed Expenses in one of three ways: (1) as an uncollectible debt on Local Social's 2017 tax return, (2) as deductible business expenses for the year 2016, which would require an amendment to Local Social's 2016 tax return, or (3) some combination of (1) and (2). (Mem. Supp. Def.'s Mot. Enforce Mediated Settlement Agreement 4–5, ECF No. 42.) Conversely, Plaintiffs argue that paragraph 3(f) clearly and unambiguously only requires Plaintiffs to work in good faith with Local Social's accounting firm to reclassify the Disputed Expenses. (Br. Opp'n to Def.'s Mot. Enforce Mediated Settlement Agreement 7, ECF No. 43.) Plaintiffs contend that they have worked in good faith in complete compliance with paragraph 3(f), even though they have not reclassified the expenses based on their accountant's advice, and, therefore, Defendant's Motion should be denied. (Br. Opp'n to Def.'s Mot. Enforce 9–10.)

20.  *Black's Law Dictionary* defines "good faith" as

> [a] state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage.

*Black's Law Dictionary* (10th ed. 2014); *see also* Merriam-Webster (defining "good faith" as "honesty or lawfulness of purpose"; "honesty in dealing with other people"; and "honesty, fairness, and lawfulness of purpose: absence of any intent to defraud, act maliciously, or take unfair advantage").

21.  The Court concludes that paragraph 3(f) is susceptible to more than one reasonable interpretation and, therefore, is ambiguous.  Paragraph 3(f) can reasonably be interpreted as merely requiring that Plaintiffs make a good faith effort to re-characterize the Disputed Expenses as an uncollectible debt, deductible business expenses, or a combination of the two, whether they succeed in re-characterizing the Disputed Expenses or not.  Paragraph 3(f) can also reasonably be interpreted, however, as requiring Plaintiffs to actually re-characterize the Disputed Expenses and work in good faith with Local Social's accounting firm only with regard to the method by which the expenses are re-characterized—that is, as an uncollectible debt, business expenses, or a combination of the two.  If the latter interpretation of paragraph 3(f) applies, Plaintiffs have failed to comply with the agreement as it is undisputed that Plaintiffs have not re-characterized the Disputed Expenses. Conversely, if the former definition of paragraph 3(f) applies, there is a dispute of fact as to whether Plaintiffs have complied with the agreement.

22. Because paragraph 3(f) is ambiguous, there are genuine issues of material fact as to the interpretation of the Memorandum and, accordingly, the Motion must be denied.

## IV. CONCLUSION

23. For the foregoing reasons, the Motion is **DENIED**. The issue of interpretation and effect of paragraph 3(f) of the Memorandum shall proceed to trial. The Court, by separate order, will schedule the trial of this matter and set deadlines for pretrial filings.

**SO ORDERED**, this the 9th day of May, 2018.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases