Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC, 2022 NCBC 1.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
|---|---|
| GASTON COUNTY | 19 CVS 1024 |

LORAY MASTER TENANT, LLC and JOSEPH LENIHAN,

        Plaintiffs,

v.

FOSS N.C. MILL CREDIT 2014 FUND I, LLC and FOSS AND COMPANY, INC.,

        Defendants.

**AMENDED ORDER AND OPINION ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)**

1.    **THIS MATTER** is before the Court upon Defendant Foss N.C. Mill Credit 2014 Fund I, LLC's ("Foss 2014") and Defendant Foss and Company, Inc.'s ("Foss"; together, "Defendants") Motion for Judgment on the Pleadings (the "Motion") pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rule(s)"). (ECF No. 42.)

2.    This case arises from Foss 2014's alleged delay in paying certain obligations for the right to claim state and federal tax credits that Plaintiff Loray Master Tenant, LLC ("Loray") generated during the development of the Loray Mill (the "Mill"), a historic property in Gaston County, North Carolina. Loray and Plaintiff Joseph Lenihan ("Lenihan"; together, "Plaintiffs") allege that Foss 2014 is liable for this delay and that Foss is liable for Foss 2014's actions as a result of Foss's alleged domination and control over Foss 2014. Defendants seek the dismissal of each of Plaintiffs' claims.

3.      Having considered the Motion, the related briefing, and the arguments of counsel at the hearing on the Motion, the Court **GRANTS in part** and **DENIES in part** the Motion.

> *Rosenwood, Rose & Litwak, PLLC, by Erik M. Rosenwood, Nancy S. Litwak, and Carl J. Burchette, for Plaintiffs Loray Master Tenant, LLC and Joseph Lenihan.*
>
> *Blanco Tackabery & Matamoros, P.A., by Peter J. Juran and Chad A. Archer, for Defendants Foss NC Mill Credit 2014 Fund I, LLC and Foss and Company, Inc.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

4.      The Court does not make findings of fact on motions for judgment on the pleadings under Rule 12(c) and instead recites only those allegations in the pleadings that are relevant and necessary to the Court's determination of the Motion.  The Court summarized many of these allegations in its Order and Opinion granting former Defendant Government Employees Insurance Company's ("GEICO") motion to dismiss in February 2021.  *See Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC*, 2021 NCBC LEXIS 15, at *2 (N.C. Super. Ct. Feb. 18, 2021) [hereinafter *GEICO*] (ECF No. 34).  The Court reproduces here the Court's summary of those allegations in *GEICO* that pertain to the current Motion[1]:

> 5.  The Loray Mill (the "Mill") is a large-scale urban revitalization and historic preservation project located in Gastonia, North Carolina. (First Am. Compl. [CORRECTED] ¶ 10 [hereinafter "Am. Compl."], ECF

---

[1] The Court refers to the corrected version of the Amended Complaint filed on 11 January 2021 and located at ECF No. 32 for purposes of this Order and Opinion.

No. 32.)  Loray is the developer and managing member of Loray Mill Redevelopment, LLC, the entity that owns the Mill.  (Am. Compl. ¶ 11.)

6.  The Mill was developed in part through the use of historic tax credits granted by North Carolina and the federal government to developers who restore historic buildings.  (Am. Compl. ¶ 12.)  Because developers cannot sell tax credits outright under North Carolina law, Loray sought investors to make capital contributions in exchange for the right to use the tax credits generated by the project.  (Am. Compl. ¶¶ 14–15.)

7.  On or about March 27, 2013, Loray entered into an operating agreement with various entities that agreed to become members of Loray and make investments in the Mill in exchange for the right to claim the tax credits the Mill generated.  (Am. Compl. ¶ 16.)  These investors included Chevron TCI, Inc. ("Chevron"), as well as Foss 2014 and Foss N.C. Mill Credit 2011 Fund I, LLC ("Foss 2011"), entities created by Defendant Foss and Company, Inc. ("Foss").  (Am. Compl. ¶¶ 17–18.)

8.  Pursuant to the operating agreement, Loray was to obtain loans to fund construction of the Mill.  (Am. Compl. ¶ 25.)  When tax credits were generated, Loray was to pass them through to Foss 2014 and the other Loray investors, which were to then pass those credits on to customers.  (Am. Compl. ¶ 25.)  The customers, including Foss 2014's customer, GEICO, were then to make payments to Loray through the investing entities.  (Am. Compl. ¶ 25.)

9.  To effectuate this plan, Loray borrowed $8,300,000 (the "Bridge Loan") from Central State Bank ("CSB") in March 2013.  (Am. Compl. ¶¶ 26–28.) According to Plaintiffs, "it was understood by all parties that the Bridge Loan . . . would be paid off via Defendants[.]"[2]  (Am. Compl. ¶ 27.)

10. In early March 2016, Loray notified Foss that payment was due in return for the tax credits Foss 2014 had already received and passed through to GEICO.  (Am. Compl. ¶ 32.)  On March 11, 2016, Foss suggested a new funding agreement (the "Agreement") that would allow Loray to pay off the Bridge Loan with investor payments.  (Am. Compl. ¶ 34.)  On March 22, 2016, Loray, Foss 2014, Foss 2011, and CSB entered into the Agreement.  (Am. Compl. ¶ 36.)  The Agreement provided that Foss 2014 would fund approximately $4,000,000 upon the

_____

[2] At the time the Court issued its *GEICO* decision, GEICO was a party Defendant.

signing of a settlement agreement between Loray and its general contractor, with which Loray had an ongoing dispute. (Am. Compl. ¶ 34.) Foss 2011 agreed to pay approximately $3,000,000. (Am. Compl. ¶ 42.) The Agreement did not set any other conditions or limitations on Foss 2014's payment obligation. (Am. Compl. ¶ 34.)

11. On or about March 23, 2016, Foss 2011 wired the full amount it owed to Loray, completing its obligation under the Agreement. (Am. Compl. ¶ 45.) However, Foss 2014 failed to pay its capital contributions because, as Plaintiffs allege, "G[EICO] was unwilling to fund its obligations." (Am. Compl. ¶ 46.) In response, on or about March 29, 2016, Loray requested an update on payment and confirmed that it had entered into a settlement agreement with its general contractor the prior week, partially resolving their dispute. (Am. Compl. ¶ 47; *see* Am. Compl. Ex. I.) Foss responded that it was waiting for Foss 2014's investor approval. (Am. Compl. ¶ 47.)

12. Foss 2014 then introduced a series of preconditions it required before it would make its payment. . . .[.] (Am. Compl. ¶ 48.)

13. First, Plaintiffs allege that on March 31, 2016, Foss claimed that the signed Agreement contained an error, (Am. Compl. ¶ 50), and on April 1, 2016, Foss attempted to rescind the Agreement by circulating a revised contract that would have "substantially changed" payment obligations, (Am. Compl. ¶ 49). Loray refused to sign the revised document. (Am. Compl. ¶ 53.)

14. According to Plaintiffs, "Foss then pivoted to creating a series of roadblocks and arbitrary conditions to funding, none of which were set forth in the [Agreement]." (Am. Compl. ¶ 55.) On or about April 19, 2016, Foss indicated that Foss 2014's investor would not make its payment until the Mill was lien-free. (Am. Compl. ¶ 56.) Loray worked through May and June to resolve all liens on the Mill filed by its subcontractors. (Am. Compl. ¶ 59.) Foss then indicated that it needed a title endorsement proving the Mill to be lien-free, which Loray obtained and forwarded to Foss on or about June 21, 2016. (Am. Compl. ¶¶ 59–60.)

15. Next, Foss expressed concerns that Loray's ongoing dispute with its general contractor could result in a future lien. (Am. Compl. ¶ 62.) On or about July 6, 2016, Loray attempted to explain why that was not a valid reason to withhold payment under the Agreement, (Am. Compl. ¶ 62), to which Foss responded with "yet another list of 'investor'

concerns[,]" (Am. Compl. ¶ 63). This "investor," Plaintiffs allege, was GEICO. (Am. Compl. ¶ 63.)

16. On or about July 7, 2016, Loray informed Foss that it believed Foss 2014 was in violation of its obligations under the Agreement. (Am. Compl. ¶ 64.) Foss continued to refuse payment, citing the then pending lawsuit between Loray and its general contractor as its grounds. (Am. Compl. ¶ 65.) Consequently, counsel for Loray worked to resolve the lawsuit with the general contractor. (Am. Compl. ¶ 66.) On or about July 19, 2016, Loray informed Foss that the general contractor agreed to dismiss its lawsuit against Loray. (Am. Compl. ¶ 67.)

17. Foss again refused to make its payment, this time explaining that it did not want to pay until Chevron committed to make a payment for its tax credits. (Am. Compl. ¶ 68.) On July 20, 2016, Foss drafted an escrow agreement in which Foss would pay the full amount to CSB, which would hold the funds in escrow rather than apply them to the Bridge Loan until such time as Chevron made its payment. (Am. Compl. ¶ 69.) By July 27, 2016, both Foss and Chevron insisted on the escrow agreement, which would also require Loray to pay their legal fees. (Am. Compl. ¶ 70.)

18. Chevron made a payment by August 2, 2016 in anticipation of the escrow agreement's execution. (Am. Compl. ¶ 71.) When Foss 2014 still refused to make any payments, Loray issued a notice of default. (Am. Compl. ¶ 72.) Foss 2014 continued to demand that Loray sign the escrow agreement. (Am. Compl. ¶ 73.) On August 12, 2016, Foss circulated a revised draft of the escrow agreement, and Foss 2014 wired funds to the escrow account at CSB. (Am. Compl. ¶¶ 73–74.) Plaintiff Joseph Lenihan then contacted CSB and instructed CSB to apply the payment to the Bridge Loan and otherwise release the funds to support the project. (Am. Compl. ¶ 75.) However, CSB refused, stating that all conditions of the escrow agreement had not yet been met. (Am. Compl. ¶ 76.) On August 17, 2016, counsel for Foss and CSB informed Loray that CSB had returned the funds to Foss. (Am. Compl. ¶ 83.)

19. On or about September 14, 2016, Chevron made another payment, which Foss "unilaterally decided was a condition precedent to release of its funds[.]" (Am. Compl. ¶ 86.) On September 15, 2016, Foss 2014 finally fulfilled its payment obligations under the Agreement. (Am. Compl. ¶ 87.) However, Foss informed Loray that it deducted over $25,000 in legal fees from the full amount owed, which, Plaintiffs allege, were incurred as a result of Foss's refusal to make timely payment. (Am. Compl. ¶ 88.)

*GEICO,* 2021 NCBC LEXIS 15, at \*2–8 (changes in original).

5.    Significantly for this Motion, Plaintiffs allege that at the time Lenihan instructed CSB to apply Foss 2014's escrowed funds to the Bridge Loan and otherwise release those funds to support the project, Lenihan was a personal guarantor of the Bridge Loan through execution of a Third-Party Pledge Agreement.  (Am. Compl. ¶ 28.)

6.    Plaintiffs initiated this action against Foss 2014 on 13 March 2020.  (Compl., ECF No. 3.)  Plaintiffs later sought leave to amend the Complaint to add Foss and GEICO as defendants, and Plaintiffs' motion was granted by Judge Jesse B. Caldwell, III ("Judge Caldwell") on 25 July 2020.  (Order Granting Mot. Leave Amend, ECF No. 18.1.)  Plaintiffs then filed their First Amended Complaint against Foss 2014, Foss, and GEICO on 28 July 2020.  (Am. Compl., ECF No. 5.)  As noted above, after motion and hearing, the Court dismissed Plaintiffs' claims against GEICO on 18 February 2021.  *See GEICO,* 2021 NCBC LEXIS 15.

7.    Plaintiffs' claims against Foss 2014 and Foss are for breach of the Agreement (and, in the alternative, against Foss for unjust enrichment), breach of the covenant of good faith and fair dealing, breach of fiduciary duty and constructive fraud, and civil conspiracy.  Plaintiffs also allege a claim against Foss for piercing the corporate veil, through which Plaintiffs seek to hold Foss liable for Foss 2014's actions, and, in the alternative, a claim against Foss for unfair and deceptive trade practices under N.C.G.S. § 75-1.1.

8.     Defendants filed the Motion on 2 June 2021.  After full briefing, the Court held a hearing on the Motion on 14 September 2021 (the "Hearing"), at which all parties were represented by counsel.

9.     The Motion is now ripe for resolution.

II.

LEGAL STANDARD

10.    Rule 12(c) is intended "to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit and is appropriately employed where all the material allegations of fact are admitted in the pleadings and only questions of law remain." *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70 (2020) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974)) (internal quotation marks omitted).

11.    "In considering a motion for judgment on the pleadings,

> all well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false.  As with a motion to dismiss, the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party.  A Rule 12(c) movant must show that the complaint fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar to a cause of action."

*Tully v. City of Wilmington*, 370 N.C. 527, 532 (2018) (cleaned up). "An exhibit, attached to and made a part of the [complaint], *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 206 (1970), and documents that are "the subject of the action and specifically referenced in the complaint," *Erie Ins. Exch. v. Builders Mut. Ins. Co.*, 227

N.C. App. 238, 242 (2013), are properly considered on a Rule 12(c) motion.[3] Where a document is attached, "[t]he terms of such exhibit control other allegations of the pleading attempting to paraphrase or construe the exhibit, insofar as these are inconsistent with its terms." *Wilson*, 276 N.C. at 206.

12. Before a Rule 12(c) motion may be granted, however, "[t]he party moving for judgment on the pleadings must show that no material issue of fact exists and that he is entitled to judgment as a matter of law." *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 682 (1987). Moreover, "each motion under Rule 12(c) must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits." *Newman v. Stepp*, 376 N.C. 300, 305 (2020) (citation and internal quotation marks omitted).

III.

ANALYSIS

13. Defendants contend that Plaintiffs' claims should be dismissed because they are premised on an alleged breach of the Agreement that is not supported by Plaintiffs' pleading. Relying on the absence of either a specified time for performance or a "time is of the essence" provision in the Agreement and contending that Plaintiffs have failed to allege that Loray's delay in payment was unreasonable, Defendants

---

[3] The Court notes that the Loray operating agreement (the "Operating Agreement") was not attached to Plaintiffs' Amended Complaint but was attached to Plaintiffs' opposition brief as Exhibit 1, (ECF No. 49.1). Defendants have not objected to the Court's consideration of the Operating Agreement on this Motion and the Operating Agreement was referenced and relied upon in Plaintiffs' Amended Complaint, (*see* Am. Compl. ¶¶ 16, 25, 26, 91). Accordingly, the Court concludes that it may consider the Operating Agreement without converting the Motion into one under Rule 56. *E.g.*, *Erie Ins. Exch.*, 227 N.C. App. at 242.

argue that Plaintiffs' breach of contract claim is fatally deficient. (Defs.' Br. Supp. 12(c) Mot. J. Pleadings 12–13 [hereinafter Defs.' Supp. Br.], ECF No. 43.) Defendants further assert that Plaintiffs' other claims, which Defendants contend are "mere variations of [Plaintiffs'] flawed breach of contract claim[,]" are subject to dismissal "for similar reasons." (Defs.' Supp. Br. 2.) Specifically, Defendants argue that Plaintiffs' claims for breach of fiduciary duty and constructive fraud should be dismissed because they are "really little more than an improper attempt to shoehorn a baseless breach of contract claim into a tort law framework[.]" (Defs.' Supp. Br. 2.)

A. Judge Caldwell's Rule 15 Ruling as a Bar to Defendants' Motion

14. The Court will take up Defendants' challenges to each of Plaintiffs' claims in turn but first elects to address Plaintiffs' contention that Defendants' Motion is moot because, prior to the designation of this action as a mandatory complex business case, Judge Caldwell granted Plaintiffs leave under Rule 15 to assert their claims against Foss and GEICO. Plaintiffs' arguments are substantially the same as those they advanced unsuccessfully in opposing GEICO's earlier motion to dismiss. (*See* Pls.' Mem. L. Opp'n Def. GEICO's Mot. Dismiss 12–13, ECF No. 18; Pls.' Mem. L. Opp'n Def. Foss N.C. Mill Credit 2014 Fund I, LLC, and Foss and Company, Inc.'s Mot. J. Pleadings 13–14 [hereinafter Pls.' Opp'n Br.], ECF No. 49.) Unsurprisingly, the Court reaches the same result as it did in *GEICO* for the same reasons. *See GEICO*, 2021 NCBC LEXIS 15, at \*20–21 (recognizing that "a superior court judge's prior decision to allow amendment under Rule 15 in the face of a futility defense does not foreclose a different judge's later determination of the same arguments under

Rule 12(b)(6) when the prior judge does not provide an explanation for his or her ruling").

15. Although Plaintiffs try to avoid the Court's prior ruling by seeking to distinguish Foss's procedural posture from GEICO's at the time Judge Caldwell decided Plaintiffs' Rule 15 motion, it is undisputed that Foss, like GEICO, "was not yet a party to this case when Judge Caldwell heard and decided the earlier Rule 15 motion and therefore [like GEICO] did not have an opportunity to be heard." *Id.* at *21. And although Plaintiffs point out that Foss's counsel in this action appeared at the hearing on behalf of Foss 2014, it is undisputed that Foss's counsel did not represent Foss's interests in that proceeding. Indeed, this action was not filed against Foss until 28 July 2020, several days after Judge Caldwell granted leave to amend on 25 July 2020, and Foss was not heard on Plaintiffs' motion before Judge Caldwell. (Order Granting Mot. Leave Amend, ECF No. 18.1). As explained at length in the Court's decision resolving GEICO's motion, Plaintiffs' contention that Judge Caldwell's prior ruling moots Defendants' motion is wholly without merit. *See GEICO*, 2021 NCBC LEXIS 15, at *20–21.

B. Piercing the Corporate Veil as a Basis for Foss's Liability on Plaintiffs' Claims

16. In many of their claims, Plaintiffs seek to hold Foss liable for Foss 2014's actions on a theory of piercing the corporate veil. (Am. Compl. ¶¶ 131–39; Defs.' Supp. Br. 4 n.1, 26.) Defendants move to dismiss these claims, contending that Plaintiffs cannot sustain any claims to support the veil piercing remedy and, in any event, have

failed to allege facts sufficient to permit veil piercing as a matter of law. (Defs.' Supp. Br. 25–26.)

17. The Court first addresses the appropriate choice of law. Plaintiffs allege that Foss 2014 is a Delaware limited liability company ("LLC") and that Foss is a California corporation. (Am. Compl. ¶¶ 3, 4.) As discussed in *GEICO*, "[o]ur Supreme Court has not yet settled whether North Carolina or a foreign state's law applies when a North Carolina court considers piercing the veil of a foreign corporation." *GEICO*, 2021 NCBC LEXIS 15, at \*25. As it did in *GEICO*, however, the Court will apply North Carolina law, again relying upon the Court of Appeals' decision in *Copley Triangle Associates v. Apparel America, Inc.*, 96 N.C. App. 263 (1989).[4]

18. Turning then to whether this remedy can be sustained under North Carolina law, the Court first notes that "[i]t is well recognized that courts will disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity." *Glenn v. Wagner*, 313 N.C. 450, 454 (1985) (citing 18 Am. Jur. 2d, Corporations § 15 (1965)). Nevertheless, our courts have made clear that "[a] court's decision to pierce the corporate veil, thereby 'proceeding beyond the corporate form, is a strong step: Like lightning, it is rare and severe.' " *S. Shores Realty Servs. v. Miller*, 251 N.C. App. 571, 583 (2017) (quoting

---

[4] The parties elected to brief the Motion under North Carolina law, and neither side has contended that a state's laws other than North Carolina's should apply to the assertion of the veil piercing remedy here.

*State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 439 (2008)) (cleaned up).

19. The Court set forth in *GEICO* the principles that guide North Carolina courts in considering whether the veil piercing remedy may be imposed:

> 51. Piercing the corporate veil is an extraordinary remedy. *See* [*Green v. Freeman*, 367 N.C. 136, 145 (2013)] ("Disregarding the corporate form is not to be done lightly."); *Ridgeway*, 362 N.C. at 438–39 ("While a corporation's separate and independent existence is not to be disregarded lightly, it may be theoretically permissible to look behind the corporate form." (citation and internal quotation marks omitted)).

> 52. North Carolina has adopted the instrumentality rule, under which "a corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled." *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8 (1966) (citation omitted). There are three elements "which support an attack on separate corporate entities" under this rule: (1) "control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own"; (2) "such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights"; and (3) "the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." [*Glenn*, 313 N.C. at 454–55 (1985)] (quoting *B-W Acceptance Corp.*, 268 N.C. at 9).

> 53. Factors to be considered under North Carolina's rule include: (1) inadequate capitalization, (2) non-compliance with corporate formalities, (3) complete domination and control of the corporation such that it has no independent identity, and (4) excessive fragmentation of a single enterprise into separate corporations. *Id.* at 454; *see generally* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law*, §§ 2-10[2], 2-27–2-36 (7th ed. 2019).

*GEICO,* 2021 NCBC LEXIS 15, at *25–27 (cleaned up).

20. Here, Plaintiffs broadly allege that (i) "Foss 2014 was severely undercapitalized," (Am. Compl. ¶ 133), (ii) "Foss 2014 failed to abide by corporate formalities and . . . Foss used its position as the sole manager-member, owner, operator, principal, and/or registered agent of Foss 2014 for its own purposes and benefit," (Am. Compl. ¶ 135), and (iii) "Foss exercised complete dominion and control over the business practices/decisions of Foss 2014," (Am. Compl. ¶ 132), because "Defendants Foss and Foss 2014 were operating and acting as the same entity and the alter ego of one another," (Am. Compl. ¶ 90).

21. Such allegations, however, without supporting facts, are merely conclusory and not entitled to weight under Rule 12(c). *See, e.g.*, *W & W Partners, Inc. v. Ferrell Land Co., LLC*, 2018 NCBC LEXIS 52, at *25–26 (N.C. Super. Ct. May 22, 2018) (noting that "rote recitation of the factors enunciated by North Carolina's appellate courts" could not sustain the veil piercing remedy); *Estate of Chambers v. Vision Two Hospitality Mgmt., LLC*, 2013 NCBC LEXIS 52, at *12 (N.C. Super. Ct. Nov. 21, 2013) ("Mere recitations of the elements of a veil piercing claim and the factors alleged to show control, without supporting factual allegations, are 'bare legal conclusions' not entitled to any deference in considering a motion to dismiss a veil piercing claim."); *see also, e.g.*, *KNC Techs., LLC v. Tutton*, 2019 NCBC LEXIS 72, at *29–30 (N.C. Super. Ct. Oct. 9, 2019) (finding insufficient conclusory allegations stating that "[the defendant] has complete domination and control over [the entity] such that it has no separate mind, will, or existence of its own, and that, on information and belief, [the

defendant] used the control to circumvent the prohibitions set forth in the Settlement Agreement and Consent Order" (cleaned up)).

22. Plaintiffs also advance more specific factual allegations with supporting exhibits, but these fare no better under the Court's analysis. Plaintiffs allege that George Barry ("Barry") was both Foss's President and the chief manager of North Carolina Housing Partners, LLC ("NCHP"), which served as manager of Foss 2014. (Am. Compl. ¶¶ 52, 94; Am. Compl. Ex. M.) Plaintiffs further allege that Barry received communications about Foss 2014 at his Foss email address and listed his Foss email address in his contact information. (*See, e.g.*, Am. Compl. Exs. A–B, D, F, G, I–J, M, Q–R.) Plaintiffs also allege that Foss and Foss 2014 had the same lawyers. (Am. Compl. Ex. A; Am. Compl. ¶¶ 33, 36.) While these allegations show a relationship between Foss and Foss 2014 and that Barry had a role with each, they do not, without more, permit an inference that Foss 2014 was a "mere instrumentality or tool" of Foss with "no separate mind, will or existence of its own" to permit veil piercing. *Glenn*, 313 N.C. at 458.

23. Plaintiffs' primary factual allegations supporting its theory are set forth in paragraph 91 of the Amended Complaint. There, Plaintiffs allege that "Foss exerted total dominion over Foss 2014 as principal by, and not limited to:

(a) directing Foss 2014 to enter into the 2013 Operating Agreement;
(b) directing Foss 2014 to enter into the 2016 Acknowledgement and Consent Agreement;
(c) directing Foss 2014 to attempt to force Plaintiffs to enter into a revised Acknowledgement and Consent Agreement;
(d) directing Foss 2014 to insist upon an escrow agreement as a precondition to funding the Bridge Loan

(e) directing Foss 2014 to refuse to sign the escrow agreement it insisted upon;
(f) directing Foss 2014 to withhold funds rightfully due to LMT
(g) directing Foss 2014 to set a variety of post-agreement; conditions to funding, in violation of Foss 2014's contractual obligations toward LMT;
(h) fully funding all of Foss 2014's operations;
(i) providing all capital used by Foss 2014 in furtherance of operations;
(j) directing the movement of funds such to prevent Foss 2014 from meeting its contractual obligations."

(Am. Compl. ¶ 91.)

24. Rather than show Foss's domination and control over Foss 2014, however, most of these allegations—particularly those at paragraphs 91(a)–(g) and (j)—simply reflect Barry's conduct in directing Foss 2014 as the chief manager of NCHP, Foss 2014's manager. Our courts have made clear that actions taken in the "exercise of ordinary daily management" of the entities at issue is not sufficient, standing alone, to permit veil piercing. *See, e.g.*, *S. Shores Realty Servs.*, 251 N.C. App. at 588 (noting that the "exercise of ordinary daily management" would not be sufficient to permit veil piercing).

25. Plaintiffs' remaining allegations in paragraph 91—at paragraphs 91(h) and (i)—suggest that Foss 2014 was undercapitalized but they are offered without any factual allegations showing that Foss 2014 was insolvent or had been intentionally capitalized without sufficient financial resources to conduct its business operations. As such, the fact that Foss 2014 obtained investment capital and financing from Foss, or from any other third party for that matter, is unremarkable and provides no basis for veil piercing.

26.   Moreover, Plaintiffs have not alleged facts showing that Foss commingled its funds with Foss 2014, including by paying Foss 2014's debts directly, *see Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at \*13 (N.C. Super. Ct. Mar. 27, 2017) (concluding that defendant's direct payment of other defendant's debts favored veil piercing), or that Foss 2014 was a "puppet entity . . . created for the purpose of entering into the relevant contract or used as a means to unjustly insulate another from liability," *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2018 NCBC LEXIS 84, at \*12–13 (N.C. Super. Ct. Aug. 15, 2018) (noting that "[t]here must be some indicia of fraudulent or inequitable conduct" to pierce the corporate veil in a case for breach of contract); *see also generally Robinson on North Carolina Corporation Law* § 2.10 (recognizing that "few North Carolina cases have cited evidence of deficient capitalization as a major factor supporting a claim seeking to disregard a corporate entity").

27.   Plaintiffs further allege that Foss 2014 is a "mere shell," permitting veil piercing, because Foss 2014 is alleged to be a single purpose entity. (Am. Compl. ¶ 18.)  But the fact that an entity is created for a single purpose, without more, is insufficient to sustain the veil piercing remedy. *See, e.g.*, *RCC Ventures, LLC v. Brandtone Holdings, Ltd.*, 322 F.R.D. 442, 448 (S.D.N.Y. 2017) (holding that "the mere assertion of [special purpose vehicle] (SPV) status" is insufficient for veil piercing and noting that "SPVs are frequently created with care precisely to avoid the risk that a court would disregard their corporate separateness from their parents"); *Am. Federated Title Corp. v. GFI Mgmt. Servs.*, No. 13-CV-6437 (KMW), 2016 U.S.

Dist. LEXIS 106434, at *8 (S.D.N.Y. Aug. 11, 2016) (holding that "mere formation of [a single-purpose-entity that was signatory to contract] as an asset-less entity" did not merit veil piercing); *see also Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2017 NCBC LEXIS 14, at *37 (N.C. Super. Ct. Feb. 24, 2017) ("[C]lose or solo ownership or membership alone does not always equate to complete domination and control and, thus, veil piercing.").

28.     At most, Plaintiffs have alleged facts showing that Barry directed Foss 2014 to engage in various activities while he was the chief manager of Foss 2014's manager, that he occasionally received Foss 2014 communications at his Foss email address, that Foss and Foss 2014 employed the same legal counsel, and that Foss provided investment and operating funds to Foss 2014.  Such allegations, especially without any factual allegations of fraudulent or inequitable conduct, are insufficient to permit a reasonable factfinder to conclude that Foss 2014 "had 'no separate mind, will or existence of its own' and was therefore the 'mere instrumentality or tool' of [Foss]," *Glenn*, 313 N.C. at 458.  As a result, particularly considering our courts' admonition that veil piercing "is rare and severe," *Ridgeway*, 362 N.C. at 439 (cleaned up), "a drastic remedy," *Best Cartage, Inc. v. Stonewall Packaging, LLC*, 219 N.C. App. 429, 439 (2012) (citation omitted), and "should be invoked only in an extreme case where necessary to serve the ends of justice," *Dorton v. Dorton*, 77 N.C. App. 667, 672 (1985), the Court concludes that Plaintiffs have failed to allege facts sufficient to permit the veil piercing remedy.  *See, e.g.*, *Best Cartage, Inc.*, 219 N.C. App. at 440 (rejecting piercing of subsidiary's veil even though parent negotiated a contract with

plaintiff to supply services to subsidiary, transferred raw materials to subsidiary, and directed parent's employee to sign contract for subsidiary); *State ex rel. Cooper v. Western Sky Fin., LLC*, 2015 NCBC LEXIS 87, at *18 (N.C. Super. Ct. Aug. 27, 2015) (rejecting veil piercing, noting that even when a single person "was significantly involved in directing" the subordinate entity, veil piercing requires sufficient domination and control to cause the entities to "los[e] their separate corporate identities").

29.    Accordingly, based on the above, the Court concludes that Plaintiffs have not alleged facts sufficient to pursue the veil piercing remedy against Foss and that Plaintiffs' claims against Foss premised upon piercing Foss 2014's veil to reach Foss as Foss 2014's alter ego should be dismissed.[5]

C.    Statute of Limitations as a Bar to Plaintiffs' Claims Against Foss

30.    Defendants also contend that to the extent Plaintiffs have asserted claims against Foss that are not based on veil piercing, those claims are barred by the applicable statute of limitations.  The Court agrees, in part.

31.    First, Plaintiffs' claims against Foss for breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and civil conspiracy each have a three-year statute of limitations.  *See, e.g.*, *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 335 n.5 (2015) (recognizing three-

---

[5] In light of the Court's ruling, the Court need not address the parties' competing contentions concerning the relation back of Plaintiffs' claims against Foss to the date of the filing of Plaintiffs' original complaint. *See Ridgeway*, 362 N.C. at 443 (holding that "initiating a suit against a corporation tolls the statute of limitations with respect to its alter egos").

year statute of limitations for breach of contract, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing) (citing N.C.G.S. § 1-52(1), (5), (9) (2017)); *Housecalls Home Health Care, Inc. v. State*, 200 N.C. App. 66, 70 (2009) (three-year statute of limitations for unjust enrichment); *Carlisle v. Keith*, 169 N.C. App. 674, 685 (2005) (same for civil conspiracy based on a breach of fiduciary duty claim).

32. For each of these claims, "the statute [of limitations] begins to run when the claim accrues," *Miller v. Randolph*, 124 N.C. App. 779, 781 (1996), and "the cause of action generally accrues when the right to institute and maintain a suit arises," *Ocean Hill Joint Venture v. North Carolina Dep't of Environment, Health & Natural Resources*, 333 N.C. 318, 323 (1993) (citation and internal quotation marks omitted).[6]

33. Plaintiffs allege that the Agreement was breached either on 23 March 2016 or 22 April 2016. (Pls.' Opp'n Br. 9.) These are the same dates Plaintiffs allege that Foss was unjustly enriched by withholding payment, (Am. Compl. ¶ 103; Pls.' Opp'n Br. 8–10), and that Foss breached its fiduciary duty to Plaintiffs to make timely

---

[6] Each of these claims accrues when the plaintiff knew or should have known of the facts giving rise to the claim. *See, e.g.*, *Chisum v. Campagna*, 376 N.C. 680, 702 (2021) (breach of contract claim accrues when the plaintiff "became aware or should have become aware of the [defendant's breach]"); *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38 (2018) (treating a claim for breach of the covenant of good faith and fair dealing the same as a breach of contract where the claims are based on the same acts); *Cody Creek Park, Inc. v. Capital One Servs., LLC*, 1:16CV1136, 2017 U.S. Dist. LEXIS 115801, at *5 (W.D.N.C. July 25, 2017) (recognizing that under North Carolina law, "[a]n unjust enrichment claim accrues when the wrong is complete." (citation and internal quotation marks omitted)); *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 68–69 (2005) ("the statute of limitations begins to run when the claimant knew or, by due diligence, should have known of the facts constituting the basis for the [breach of fiduciary duty] claim." (cleaned up)); *see also Carlisle*, 169 N.C. App. at 685 (noting that a civil conspiracy claim is time-barred when the claims on which it depends are time-barred).

payment, (Am. Compl. ¶¶ 117–18). The action against Foss, however, was not filed until 28 July 2020, over four years later. (Am. Compl.) Accordingly, accepting either of Plaintiffs' pleaded dates for the accrual of its claims as true, Plaintiffs' claims for breach of contract, unjust enrichment, and breach of fiduciary duty, as well as Plaintiffs' attendant claims for breach of the covenant of good faith and fair dealing and civil conspiracy, accrued more than three years before Plaintiffs asserted these claims against Foss. As such, these claims are time-barred and must be dismissed on this basis.

34. Plaintiffs' alternative claim against Foss for alleged violation of N.C.G.S. § 75-1.1, North Carolina's unfair and deceptive trade practices statute ("UDTPA"), is subject to a four-year statute of limitations. N.C.G.S. § 75-16.2 (2017); *Shepard v. Ocwen Fed. Bank, FSB*, 361 N.C. 137, 141 (2006). Defendants also seek to dismiss that claim on statute of limitations grounds, contending that more than four years lapsed between the alleged unfair act—Foss 2014's nonpayment in either March or April 2016—and the filing of the action against Foss in July 2020. (Defs.' Supp. Br. 24–25). However, the Court concludes that it need not reach this issue in light of the Court's disposition of the claim on the pleadings as set forth below in section F.

D. <u>Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing</u>

35. Defendants next contend that Plaintiffs' claims for breach of contract and for breach of the covenant of good faith and fair dealing against Foss and Foss 2014 must be dismissed because (i) it is undisputed that Foss was not a party to the Agreement between Loray and Foss 2014 and (ii) Plaintiffs failed to plead that Foss

2014's payment in September 2016 was not made within a reasonable time after Foss 2014's payment obligation arose. In particular, Defendants argue that the absence of either a provision in the Agreement specifying a time for Foss 2014's payment or a "time is of the essence" clause permitted Foss 2014 to make its payment within a "reasonable time" after its obligation arose and that Plaintiffs' failure to specifically plead that Foss 2014's payment was unreasonably delayed is fatal to its claims. (Defs.' Reply Br. Supp. Mot. J. Pleadings 7 [hereinafter Defs.' Reply Br.], ECF No. 50.; Defs.' Supp. Br. 12–13.)

36. As an initial matter, and apart from statute of limitations grounds, the Court agrees with Defendants that Plaintiffs' claim for breach of contract must be dismissed against Foss because it is a non-party to the Agreement. Indeed, the Court has already concluded that Plaintiffs may not pierce Foss 2014's corporate veil to hold Foss liable for Foss 2014's nonpayment, and North Carolina law is clear that, absent veil piercing or agency, "as a matter of law, a non-party to a contract cannot be held liable for any breach that may have occurred." *Howe v. Links Club Condo. Ass'n*, 263 N.C. App. 130, 139 (2018) (citation and internal quotation marks omitted). In addition, because Plaintiffs' claim for breach of the covenant of good faith and fair dealing is identical to their breach of contract claim, (Am. Compl. ¶ 110), it, too, must be dismissed on the same grounds. *See Cordaro*, 260 N.C. App. at 38–39 (recognizing that "where a party's claim for breach of the implied covenant of good faith and fair

dealing is based upon the same acts as its claim for breach of contract, [the court will] treat the former as 'part and parcel' of the latter").[7]

37. The Court, however, finds without merit Defendants' contention that Plaintiffs' claims against Foss 2014 fail because they did not specifically plead that Foss 2014 did not make payment within a reasonable time. Although Defendants correctly note that because the Agreement does not contain a "time is of the essence" clause, North Carolina law implies that performance must be completed within a "reasonable time," *see Harris & Gurganus, Inc. v. Williams*, 37 N.C. App. 585, 589 (1978) ("[W]hen time of performance is not made of the essence of the contract, the law implies a reasonable time standard within which performance may be required."),[8] Defendants fail to accord Plaintiffs' pleading the reasonable inferences Rule 12(c) requires.

38. "Under the notice theory of pleading[,] a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to

---

[7] For this same reason, the Court also concludes that Plaintiffs' unjust enrichment claim against Foss must be dismissed on this additional ground. Since Plaintiffs have pleaded their unjust enrichment claim in the alternative to Plaintiffs' breach of contract claim, the same principles that bar the contract claim against non-party Foss likewise bar Plaintiffs' unjust enrichment claim against Foss. *See, e.g.*, *Paul L. Whitfield, P.A. v. Gilchrist*, 126 N.C. App. 241 (1997) (barring implied contract and quantum meruit claims against non-party to contract).

[8] Plaintiffs' contention that this rule applies only in contracts for the sale of land, (Pls.' Opp'n Br. 8–9), is simply incorrect. *See, e.g.*, *Bogovich v. Embassy Club of Sedgefield, Inc.*, 211 N.C. App. 1, 20 (2011) (lending contract); *Digh v. Nationwide Mut. Fire Ins. Co.*, 187 N.C. App. 725, 728 (2007) (insurance contract); *Int'l Minerals & Metals Corp. v. Weinstein*, 236 N.C. 558, 561 (1952) (contract to sell and deliver scrap metal); *Graves v. O'Connor*, 199 N.C. 231, 234–35 (1930) (contract to pay a commission following the sale of estate property).

show the type of case brought[.]" *Sutton v. Duke*, 277 N.C. 94, 102 (1970) (citation and internal quotation marks omitted). For a breach of contract claim, "[i]t is enough to plead the '(1) existence of a valid contract and (2) breach of the terms of that contract.' " *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *10 (N.C. Super. Ct. June 19, 2019) (quoting *Poor v. Hill*, 138 N.C. App. 19, 26 (2000)). As such, this Court has recognized that "stating a claim for breach of contract is a relatively low bar." *Id.* at *11.

39. Plaintiffs' allegations meet this low bar. Not only does Plaintiffs' amended complaint contain numerous allegations which, when viewed in the light most favorable to Plaintiffs, permit a reasonable factfinder to conclude that Foss 2014 made its payment unreasonably late and thereby breached the Agreement, but Plaintiffs' allegations also put Defendants on notice that Plaintiffs contend in this action that Foss 2014 unreasonably delayed its payment in breach of the Agreement. Plaintiffs' failure to specifically plead that Foss 2014's payment was not made "within a reasonable time" is without consequence in such circumstances because Plaintiffs have pleaded facts and made allegations that effectively convey the very same thing. *See, e.g., Ward v. Nucapital Assocs.*, No. COA14-1249, 2015 N.C. App. LEXIS 602, at *7 (2015) ("[T]he failure to assert when a party's performance becomes due is not, standing alone, fatal to a claim for breach of contract."); *see also, e.g., Stellar Ins. Group, Inc. v. Cent. Cos., LLC*, No. 2:06cv11, 2006 U.S. Dist. LEXIS 75801, at *23 (W.D.N.C. 2006) (holding that "there are no magic words for pleading [a contract claim under North Carolina law]"); *Feltman v. City of Wilson*, 238 N.C. App. 246, 253–

54, (2014) (rejecting "magic words" such as "but for" to plead causation). Accordingly, the Court concludes that Defendants' motion to dismiss Plaintiffs' breach of contract and breach of covenant of good faith and fair dealing claims should be denied on this ground.[9]

### E. Breach of Fiduciary Duty and Constructive Fraud

40. Defendants next seek to dismiss Plaintiffs' claim against Foss and Foss 2014 for breach of fiduciary duty. To successfully plead a breach of fiduciary duty claim, "a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 339 (2019). "Thus, to make out a claim for breach of a fiduciary duty, plaintiffs must first allege facts that, taken as true, demonstrate that a fiduciary relationship existed between the parties." *Id.* at 339–40.

41. "[A] fiduciary relationship is generally described as arising when 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.' " *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367 (2014) (quoting *Green*, 367 N.C. at 141). "North Carolina recognizes two types of fiduciary relationships: *de jure*, or those imposed by operation of law, and *de facto*, or those arising from the particular facts and circumstances constituting and surrounding the relationship."

---

[9] In light of the Court's determination, the Court need not reach Plaintiffs' contention that Section 2.B(c) of Exhibit F to the Operating Agreement sets forth a 30-day deadline for Foss 2014's payment. (Pls.' Opp'n Br. 9.)

*Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 355 (2019). Plaintiffs do not contend that Foss 2014 had a *de jure* fiduciary relationship with Loray. (Pls.' Opp'n Br. 10.) Thus, the Court limits its consideration to whether a *de facto* fiduciary relationship existed between Loray and Foss 2014.

42. A *de facto* fiduciary relationship exists where there is "confidence reposed on one side, and resulting domination and influence on the other." *Dalton v. Camp*, 353 N.C. 647, 652 (2001) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931)) (cleaned up). "The standard for finding a *de facto* fiduciary relationship is a demanding one: 'Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen.' " *Lockerman v. S. River Elec. Mbrshp. Corp.*, 250 N.C. App. 631, 636 (2016) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613 (2008)).

43. Pertinent to the present Motion, "[o]ur courts have been clear that general contractual relationships do not typically rise to the level of fiduciary relationships." *Sykes*, 372 N.C. at 340. Notably, "[p]arties to a contract do not thereby become each other's fiduciaries; they generally owe no special duty to one another beyond the terms of the contract[.]" *Id.* (quoting *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 61 (1992)). Even where one party is in the "position as the holder of the purse strings," "no [fiduciary] relationship arises absent the existence of dominion and control by one party over another." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 474 (2009). Thus, "[a]s a matter of law, there can be no fiduciary relationship

between parties in equal bargaining positions dealing at arm's length[.]" *French Broad Place, LLC v. Asheville Sav. Bank, S.S.B.*, 259 N.C. App. 769, 788 (2018) (citation and internal quotation marks omitted). "In the event that a party 'fail[s] to allege any special circumstances that could establish a fiduciary relationship,' dismissal of a claim which hinges upon the existence of such a relationship would be appropriate." *Azure Dolphin, LLC v. Barton*, 371 N.C. 579, 599 (2018) (citation and internal quotation marks omitted).

44. Turning then to the matter at hand, it is important to note that Foss 2014 is a member of Loray,[10] not its manager, and North Carolina law is clear that, with limited exceptions,[11] "[m]embers of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company." *Kaplan*, 196 N.C. App. at 473. Nevertheless, because "an LLC is primarily a creature of contract," *Crouse v. Mineo*, 189 N.C. App. 232, 237 (2008) (quoting *Robinson on North Carolina Corporate Law* § 34.02, at 34-2 to 34-3), the LLC's members are "generally free to arrange their relationship however they wish," including by "[a]mong other things . . . depart[ing] from statutory default rules,

---

[10] Plaintiffs do not allege that Foss is a member of Loray or otherwise allege facts showing that Foss exercised domination and influence or control over Loray. Accordingly, Plaintiffs' claims for breach of fiduciary duty and constructive fraud against Foss necessarily fail for this reason. *See, e.g., Edwards v. Mutter*, 2019 NCBC LEXIS 111, at *10–11 (N.C. Super. Ct. Dec. 17, 2019) (dismissing claim for breach of fiduciary duty when no *de jure* fiduciary relationship existed and the claimant failed to allege circumstances giving rise to a *de facto* fiduciary relationship).

[11] A familiar exception to this rule, not applicable here, is that "a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members." *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 9, 2016).

requir[ing] supermajority votes for some or all company matters, and impos[ing] or eliminat[ing] fiduciary duties for members and managers," *Vanguard Pai Lung,* 2019 NCBC LEXIS 39, at *17–18.

45.     As a result, "[t]he rights and duties of LLC members are ordinarily governed by the company's operating agreement, not by general principles of fiduciary relationships." *Strategic Mgmt. Decisions v. Sales Performance Int'l*, 2017 NCBC LEXIS 69, at *10–11 (N.C. Super. Ct. Aug. 7, 2017); *see* N.C.G.S. § 57D-2-30 (stating that an "operating agreement governs the internal affairs of an LLC[,]" including "the rights, duties, and obligations" of the LLC's members and that "the provisions of [Chapter 57D] and common law will apply only to the extent contrary or inconsistent provisions are not made in, or are not otherwise supplanted, varied, disclaimed, or nullified by, the operating agreement").

46.     Apparently recognizing that neither Chapter 57D nor North Carolina common law imposes a fiduciary duty running from Foss 2014 to Loray, Plaintiffs argue that such a duty is nevertheless imposed by contract through Loray's Operating Agreement—specifically its indemnity provision.  (Pls.' Opp'n Br. 10–11.)   That provision states, in relevant part, as follows:

> The Managing Member and the Company, jointly and severally, shall defend, indemnify, and save harmless the State Investor Member and its members, managers, employees, agents, and other representatives . . . . from any and all liability for Company obligations . . . other than those occasioned by [Foss 2014's] gross negligence, fraud, willful misconduct, malfeasance, material breach of any representation, warranty, covenant, or agreement set forth in this Exhibit F, or *breach of its fiduciary duty*.

(Pls.' Opp'n Br. Ex. A, at Ex. F 25–26 (emphasis added).)

47. Plaintiffs argue that the reference to the State Investor Member's "breach of its fiduciary duty" in the indemnity clause permits a factfinder to conclude that Foss 2014 owed a fiduciary duty to Loray. (Pls.' Opp'n Br. 11.) Plaintiffs further contend that concluding otherwise would lead to an "absurd, harsh or unreasonable result." (Pls.' Opp'n Br. 11.) Defendants, for their part, argue that Plaintiffs' interpretation of the indemnity clause is unreasonable, while contending that their own interpretation of the clause is reasonable, avoids an absurd result, and does not require that a fiduciary duty owed by Foss 2014 be inferred from the use of this language. (Defs.' Reply Br. 8–10.)

48. The Court agrees with Defendants. Applying as it must "North Carolina's established rules of contract construction," *Klos Constr., Inc. v. Premier Homes & Props., LLC*, 2020 NCBC LEXIS 85, at *25 (N.C. Super. Ct. July 21, 2020), the Court concludes that the Operating Agreement's indemnity provision cannot be read to create a fiduciary duty. Rather, the indemnity provision speaks solely to the breach, not the creation, of a fiduciary duty, and the Operating Agreement otherwise does not impose a fiduciary duty on Foss 2014. Moreover, the indemnity provision excludes indemnification for the "State Investor's Member's" breach of fiduciary duty. The State Investor Member is defined in the Operating Agreement as "either or both" Foss 2011 and Foss 2014, "as the context may require," not Foss 2014 alone, (Pls.' Opp'n Br. Ex. A, at 27), thus permitting the reasonable inference that the referenced fiduciary duty may not be one owed by Foss 2014 at all.

49. While it is certainly true that an operating agreement may create or impose fiduciary duties, *see, e.g.*, *Pender Farm Dev., LLC v. NDCO, LLC*, 2020 NCBC LEXIS 43, at *34 (N.C. Super. Ct. Apr. 7, 2020), our courts will not do so where, as here, it "would be inconsistent with the parties' bargain and with this State's policy of giving the maximum effect to the principle of freedom of contract and the enforceability of operating agreements." *Strategic Mgmt. Decisions*, 2017 NCBC LEXIS 69, at *14 (cleaned up); *see Robinson on North Carolina Corporation Law*, § 34.02[2] (noting that Chapter 57D is intended to "give the maximum effect to the principle of freedom of contract and the enforceability of operating agreements"). This conclusion is further supported because the parties acknowledged in the Agreement that they negotiated at arm's length, (*see* Am. Compl. Ex. C, at 3 ("[E]ach of them have fully considered the terms of this Agreement and has had the opportunity to discuss this Agreement with its legal counsel, and each of them is executing this Agreement without any coercion or duress on the part of State Investor Member.")), and our Supreme Court recognizes that arm's length transactions "do not typically give rise to fiduciary duties," *Dallaire*, 367 N.C. at 368.

50. Based on the foregoing, the Court concludes that Plaintiffs' breach of fiduciary duty claim fails. And because Plaintiffs' claim for constructive fraud necessarily depends upon the existence of a fiduciary relationship between Foss 2014 and Loray, that claim, too, must be dismissed. *See, e.g.*, *Ironman Med. Props., LLC v. Chodri*, 268 N.C. App. 502, 513 (2019) ("A constructive fraud claim requires a plaintiff to allege and show (1) that the defendant owes the plaintiff a fiduciary duty;

(2) that the defendant breached that duty; and (3) that the defendant sought to benefit himself in the transaction." (citation and internal quotation marks omitted)). The Court shall therefore grant Defendants' motion dismissing both claims against Foss and Foss 2014.

F.  Unfair and Deceptive Trade Practices Act

51.  The Court next considers Defendants' motion to dismiss Plaintiffs' claim against Foss for violation of North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), N.C.G.S. § 75-1, which is asserted in the alternative to Plaintiffs' veil piercing allegations.  To state a claim under the UDTPA, "a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff."  *Dalton*, 353 N.C. at 656.  "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive."  *Id*.  Significantly for present purposes, "proof of an independent tort" that is "validly alleged" or a breach of contract with "substantial aggravating circumstances" "is sufficient to make out a separate UDTPA claim." *Reid Pointe, LLC v. Stevens*, 2008 NCBC LEXIS 16, at *16–17 (N.C. Super. Ct. Aug. 18, 2008) (collecting cases).

52.  To begin, to the extent that Plaintiffs premise their UDTPA claim against Foss on their claims against Foss for breach of fiduciary duty and constructive fraud, the UDTPA claim necessarily fails.  Plaintiffs' failure to successfully plead those claims, as discussed above, subjects Plaintiffs' UDTPA claim to dismissal to the extent the UDTPA claim is premised on those same allegations.  *See Craven v. SEIU*

*COPE*, 188 N.C. App. 814, 819 (2008) (dismissing an unfair and deceptive trade practices claim where the underlying tort was dismissed).

53. Next, to the extent that Plaintiffs premise their UDTPA claim on Foss's alleged breach of contract, alleged breach of the covenant of good faith and fair dealing, and alleged unjust enrichment, the UDTPA claim likewise fails because Plaintiffs have failed to allege the substantial aggravating circumstances accompanying those breaches necessary to sustain such claims in these circumstances. *See, e.g.*, *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 217 (2007) ("Mere breach of contract is not sufficient to sustain an action for [unfair and deceptive trade practices], but if the breach is surrounded by substantial aggravating circumstances, it may sustain an action for [unfair and deceptive trade practices]."); *Martin Communs., LLC v. Flowers*, 2021 NCBC LEXIS 30, at 18 (N.C. Super. Ct. Mar. 31, 2021) (dismissing UDTPA claim based on breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment for failure to plead substantial aggravating circumstances). Not only is Foss a non-party to the Agreement—the contract on which Plaintiffs' contract and quasi-contract claims are based—but the conduct alleged to support the alleged breach constitutes, at most, an intentional breach of contract, which, without more, is insufficient to state a claim under the UDTPA. *See, e.g.*, *Tillery Envtl. LLC v. A&D Holdings, Inc.*, 2017 NCBC LEXIS 68, at *9 (N.C. Super. Ct. Aug. 4, 2017) ("North Carolina case law is clear that a willful or intentional breach of contract is not on its own sufficiently unfair or deceptive to support a section 75-1.1 claim.").

54. Plaintiffs offered a new argument at the Hearing in an effort to salvage their UDTPA claim—that Plaintiffs' allegations constitute an unpleaded tortious interference with contract claim, which they contend permits the UDTPA claim to proceed. Setting aside the procedural impropriety of Plaintiffs' assertion of this unbriefed argument for the first time at the Hearing,[12] the Court concludes that this argument, too, must fail.

55. "[T]he pleading standards for a tortious interference with contract claim are strict," *Southeast Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 52, at \*27 (N.C. Super. Ct. Aug. 20, 2019) (quoting *Kerry Bodenhamer Farms*, 2017 NCBC LEXIS 27, at \*16), and require allegations showing: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff," *Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC*, 368 N.C. 693, 700 (2016) (citation omitted).

56. Plaintiffs premise their purported tortious interference claim on Foss's alleged interference with Foss 2014's performance of its obligation to timely pay Loray under the Agreement. (*See* Am. Compl. ¶¶ 96, 99, 103.) Plaintiffs' purported

[12] *See, e.g.*, *Price v. City of Winston-Salem*, 141 N.C. App. 55, 59 (2000) (declining to consider unbriefed issue); *Loyd v. Griffin*, 2021 NCBC 51, 60 n.8 (N.C. Super. Ct. Sept. 1, 2021) (declining to consider unbriefed argument made for the first time at the hearing on the motion).

claim fails, however, because Plaintiff has not alleged facts showing Foss acted "without justification."

57. North Carolina law is clear that "[i]nterference with a contract is 'justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors.' " *Beverage Sys. of the Carolinas*, 368 N.C. at 700 (quoting *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498 (1992)). However, "[i]f the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221 (1988); *see also Glover Constr. Co. v. Sequoia Servs., LLC*, 2020 NCBC LEXIS 76, at *37 (N.C. Super. Ct. June 18, 2020) (applying *Hooks*). Thus, to survive a motion to dismiss, a "complaint [for tortious interference] must admit of no motive for interference other than malice." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605 (2007). As this Court has recognized, "complaints sometimes defeat themselves by alleging facts that reveal that the interference was justified or privileged." *Lunsford v. Viaone Servs., LLC*, 2020 NCBC LEXIS 111, at *14 (N.C. Super. Ct. Sept. 28, 2020) (cleaned up). This is one of those instances.

58. The required malice in this context is legal malice, rather than actual malice. *See Childress v. Abeles*, 240 N.C. 667, 675 (1954) ("It is not necessary . . . to allege and prove actual malice in the sense of personal hatred, ill will, or spite"—only "the intentional doing of the harmful act without legal justification."); *Bldg. Ctr., Inc. v. Carter Lumber of the North, Inc.*, 2017 NCBC LEXIS 85, at *28, (N.C. Super. Ct. Sept. 21, 2017). "Legal malice 'means intentionally doing a wrongful act or exceeding

one's legal right or authority in order to prevent the making of a contract between two parties,' and the act 'must be taken with the design of injuring one of the parties to the contract or of gaining some advantage at the expense of a party.' " *Bldg. Ctr.*, 2017 NCBC LEXIS 85, at \*28–29 (quoting *Murphy v. McIntyre*, 69 N.C. App. 323, 328–29 (1984)).

59. Here, Plaintiffs have alleged that Foss refused to release funds for numerous reasons—the need for the project to be "lien free" (Am. Compl. ¶ 56); the need to accommodate certain "investor concerns" (Am. Compl. ¶ 63); the need for Loray to be dismissed from Centurion's lawsuit (Am. Compl. ¶ 65); the need for Plaintiffs to execute an escrow agreement, and the need for Chevron to pay its funds first, (Am. Compl. ¶¶ 69, 85). None of these reasons, however, suggests that Foss wished to harm Plaintiffs or to act other than for legitimate business reasons to protect Foss's position in the transaction. The Court therefore concludes that Plaintiffs' late-found claim for tortious interference with contract is not supported by allegations showing legal malice and cannot provide grounds to permit their UDTPA claim to survive Defendants' motion.

60. Finally, while Plaintiffs allege that Foss's actions between 22 March 2016 and 15 September 2016 delayed Foss 2014's payment by several months, the Court cannot conclude that these actions rise to the level of "a practice [that] has the capacity or tendency to deceive" or one that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" as required under the

UDTPA. *See, e.g., Mitchell v. Linville*, 148 N.C. App. 71, 74–76 (2001) (concluding that a failure to honor an agreement "was not an act tending to mislead or deceive").

61. For each of these reasons, therefore, the Court concludes that Plaintiffs' UDTPA claim must be dismissed.

G. Civil Conspiracy

62. Defendants seek to dismiss Plaintiffs' claim for civil conspiracy because each of the claims on which it is premised are subject to dismissal. The Court agrees.

63. "To create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." *Krawiec v. Manly*, 370 N.C. 602, 613 (2018) (quoting *Ridgeway*, 362 N.C. at 444). "[A] complaint sufficiently state[s] a claim for civil conspiracy when it allege[s] (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *Ridgeway*, 362 N.C. at 444.

64. Plaintiffs base their civil conspiracy claim on the "wrongful and tortious actions complained of" in the Amended Complaint. (Am. Compl. ¶ 127.) Because the Court has determined that Plaintiffs' tort claims must be dismissed, those claims cannot provide a basis for Plaintiffs' civil conspiracy claim. *See, e.g., Krawiec*, 370 N.C. at 615 (dismissing civil conspiracy claim where the tort claims alleged as the underlying wrongful acts were dismissed); *see also, e.g., USA Trouser, S.A. de C.V. v. Williams*, 258 N.C. App. 192, 201 (2018) ("A civil conspiracy claim must be based on an adequately pled underlying claim.").

65. Moreover, to the extent that Plaintiffs allege a purported conspiracy between Foss and Foss 2014 to breach the Agreement, those allegations are identical to those the Court found fatally deficient in assessing Plaintiffs' allegations against Foss for tortious interference with contract as a basis for their UDTPA claim. As a result, the Court concludes that Plaintiffs' claim for civil conspiracy is not supported by requisite wrongful acts and must therefore be dismissed. *See, e.g., New Bar P'ship v. Martin*, 221 N.C. App. 302, 310 (2012) ("[W]here a plaintiff's underlying claims fail, its claim for civil conspiracy must also fail." (citation and internal quotation marks omitted)).

### H. Lenihan as a Third-Party Beneficiary

66. Finally, Defendants move to dismiss all claims asserted by Lenihan for lack of standing, contending that Lenihan was neither a party to either the Operating Agreement or the Agreement nor an intended beneficiary of the latter and thus is without an enforceable interest as a party plaintiff. (Defs.' Supp. Br. 10–12.) Plaintiffs disagree and argue that because Lenihan personally guaranteed the Bridge Loan, he was "a known intended third-party beneficiary" of the Agreement since it provided for payment of that loan. (Pls. Opp'n Br. 12; Am. Compl. ¶ 97.)

67. "[I]n order to establish a claim based on the third-party beneficiary doctrine, a complainant must show: '(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit.' " *Davis & Taft Architecture, P.A. v. DDR-Shadowline, LLC*, 268 N.C. App. 327, 332 (2019) (quoting *Hoots v. Pryor*, 106 N.C. App. 397, 408 (1992)). "The real test is said to be whether the contracting parties

intended that a third party should receive a benefit which might be enforced in the courts. It is not sufficient that the contract does benefit him if in fact it was not intended for his direct benefit." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 651 (1991) (cleaned up).

68. Beneficiaries who benefit directly are sometimes called "direct" or "intended" beneficiaries and are distinguished from "incidental" beneficiaries. *See generally* The Restatement (Second) of Contracts § 302 (1981) (discussing distinction). In evaluating whether a third-party beneficiary is "direct" or incidental," "[t]he intent of the parties is ascertained by construction of the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." *DeMent v. Nationwide Mut. Ins. Co.*, 142 N.C. App. 598, 604 (2001) (quoting *Chem. Realty Corp. v. Home Fed. Sav. & Loan Assoc.*, 84 N.C. App. 27, 34 (1987) (cleaned up). "When a third person seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement." *Town of Belhaven v. Pantego Creek, LLC*, 250 N.C. App. 459, 471 (2016) (quoting *Babb v. Bynum & Murphrey, PLLC,* 182 N.C. App. 750, 753–54 (2007)).

69. Upon careful review, the Court concludes that Lenihan is an "incidental," not a "direct," beneficiary of the Agreement. While Lenihan undoubtedly benefits from the Agreement's mechanism for payment of the Bridge Loan, that Agreement contemplates that Foss 2014 will make payment directly to CSB to pay off the Bridge Loan without any mention of Lenihan's role as guarantor or any provision for the

cancellation of his guaranty. By the Agreement's plain terms, therefore, the benefits Lenihan obtained under the Agreement derive from the Agreement's objective—i.e., the payment of the Bridge Loan. The fact that Lenihan benefited from the Agreement's performance is not discussed or contemplated by the Agreement's plain terms, and the fact that Lenihan anticipated a benefit from the parties' entry into the Agreement does not show "an intent by the parties for [Lenihan] to receive a benefit that is enforceable in the courts." *Roseboro Ford, Inc. v. Bass*, 77 N.C. App. 363, 368 (1985). In such circumstances, Lenihan is merely an incidental, not an intended or direct, beneficiary of the Agreement, and he has no right to enforce the Agreement. *See, e.g., Union Grove Milling & Mfg. Co. v. Faw*, 109 N.C. App. 248, 252 (1993) (noting that a third party was an incidental beneficiary because the "benefits flowing to [it] [were] due to circumstances previously arising"); *Carolina Builders Corp. v. AAA Dry Wall, Inc.*, 43 N.C. App. 444, 448 (1979) (stating that the performance between the two parties to the contract could be made "without plaintiff's receiving any benefit whatsoever").

70. Plaintiffs' substantial reliance on *Snyder v. Freeman*, 300 N.C. 204 (1980), to sustain their argument is misplaced. In *Snyder*, the plaintiff sought to recover as a third-party beneficiary under a shareholders' agreement made between the defendants as the parties with control over the corporation. *Id.* at 220–22. The shareholders' agreement provided that the corporation would "pay salaries accrued to [plaintiff.]" *Id.* at 207. In that circumstance, the Supreme Court determined that the plaintiff could recover as a third-party beneficiary because the parties to the

agreement "promised to cause the corporation over which they have full control to pay plaintiff." *Id.* at 222. In contrast, the Agreement here does not mention Lenihan, much less contemplate or direct that his guaranty be released, and, unlike the shareholders' control over the corporation in *Snyder*, Foss 2014 had no authority to cause CSB to release Lenihan's guaranty at any time. The Court thus concludes that Lenihan lacks standing to assert claims as a party plaintiff in this action and that his purported claims in this action should therefore be dismissed.

IV.

CERTIFICATION

71. On 13 December 2021, the Court filed its Order and Opinion on Defendants' Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (the "Order and Opinion"), (ECF No. 56), which, for the same reasons set forth above, dismissed all claims against Foss and all claims against Foss 2014 except for Loray's claims against Foss 2014 for breach of contract and breach of the covenant of good faith and fair dealing. *See Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC*, 2021 NCBC 78 (N.C. Super. Ct. Dec. 13, 2021). At the time the Order and Opinion was filed, the Court did not certify its rulings dismissing Plaintiffs' claims against Foss and Foss 2014 as a final judgment under Rule 54(b).

72. On 23 December 2021, Plaintiffs filed a Motion to Amend Judgment and to Stay (the "Motion to Amend"), (ECF No. 57), under Rules 52, 54, and 60 seeking the Court's amendment of the Order and Opinion to certify the dismissal of the claims against Foss and Foss 2014 as a final judgment pursuant to Rule 54(b) and to stay

all other matters pending the disposition of Plaintiffs' forecasted appeal of those dismissals.[13] Plaintiffs acknowledge that the Order and Opinion is interlocutory but contend that proceeding to trial on Loray's claims for breach of contract and breach of the covenant of good faith and fair dealing against Foss 2014 before resolving the Court's dismissal of Plaintiffs' claims against Foss and Foss 2014 on appeal could lead to "a waste of judicial resources, substantially increase the burden on the litigants, and create the possibility of inconsistent verdicts" if the Court's rulings are ultimately overturned. (Pls.' Mem. Supp. Mot. Amend J. and Stay 5, ECF No. 58.) Defendants do not oppose Plaintiffs' request for certification, provided certain discovery deadlines are extended pending resolution of Plaintiffs' anticipated appeal, which the Court intends to extend in a separate order. (Resp. to Pls.' Mot. Amend J. and Stay 1, ECF No. 60.) The parties expressly waived their right to request a hearing on the Motion to Amend, and the Court, in the exercise of its discretion, elects to rule on the Motion to Amend without a hearing. *See* BCR 7.4 ("The Court may rule on a motion without a hearing.").

73. Where, as here, a court order does not "dispose of the entirety of the case," the order is interlocutory and not usually subject to immediate appeal. *See, e.g.*, *Chidnese v. Chidnese*, 210 N.C. App. 299, 302–03 (2011); N.C. R. Civ. P. 54. An interlocutory order may be immediately appealable, however, if the trial court

---

[13] Although Plaintiffs move under Rules 52, 54, and 60, the proper rule under which to seek trial court certification court is Rule 54(b). *See O'Neill v. S. Nat'l Bank*, 40 N.C. App. 227, 230 (1979) (finding that Rules 52 and 60 do not apply to interlocutory orders).

certifies the order as a final judgment under Rule 54(b). *See Doe v. City of Charlotte*, 273 N.C. App. 10, 19–20 (2020).

74. Rule 54(b) states in relevant part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes.

N.C. R. Civ. P. 54(b).

75. Rule 54(b) further provides that "any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." N.C. R. Civ. P. 54(b). Rule 54(b) thus permits a trial court to certify an interlocutory order as a final judgment subject to immediate appeal by amending the court's previous order when the trial court concludes that there is no just reason to delay the appeal of the court's rulings. *See Doe,* 273 N.C. App. at 20 (noting that to permit an immediate appeal, "the trial court simply could amend the initial order by entering a new order with the same substantive language as the initial order but with the additional Rule 54(b) certification language added") (cleaned up).

76. Our appellate courts have affirmed a trial court's finding of no just reason for the delay of an appeal in various fact-specific circumstances, including where "the claims that were dismissed and those that remain are factually and legally intertwined and pertain to essentially the same conduct such that proceeding to trial

could produce verdicts inconsistent with verdicts which may later result from trial of one or more of the claims which were dismissed." *Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 8 (2007) (cleaned up). No just reason for delay has also been found where immediate appeal would "promote judicial economy" when numerous claims are involved. *See Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 538 (2007). Certification is left to the discretion of the trial court and the court's decision is given "great deference." *See, e.g., Hoke Cnty. Bd. of Educ. v. State*, 198 N.C. App. 274, 277 (2009) ("We generally accord great deference to a trial court's certification that there is no just reason to delay the appeal."); *see generally* 2 G. Gray Wilson, North Carolina Civil Procedure 54-8 (2007).

77. After considering the Motion to Amend, the related briefs, appropriate matters of record, and the applicable law, the Court concludes that it should amend the Order and Opinion to include a certification of its dismissal of Plaintiffs' claims against Foss and Foss 2014 as a final judgment subject to immediate appellate review.

78. The remaining claims against Foss 2014 and the dismissed claims are legally intertwined and arise from the same facts and circumstances surrounding Plaintiffs' and Defendants' efforts to develop the Loray Mill in Gaston County. *See Kinesis Adver., Inc.*, 187 N.C. App. at 8 (finding the claims were "factually and legally intertwined" where they were based on the same alleged conduct). In particular, Plaintiffs' claims against Foss and Foss 2014 stem from the same alleged delay in Foss 2014's payment of sums owed to Loray, and Foss's potential liability to Plaintiffs

is not only dependent on its own alleged conduct but also on Foss 2014's alleged conduct under a theory of piercing the corporate veil. Thus, proceeding to trial on Loray's remaining claims against Foss 2014 for breach of contract and breach of the covenant of good faith and fair dealing before resolution of an appeal of the dismissed claims would potentially result in two trials involving identical facts, albeit on different legal theories, with the risk of different juries reaching inconsistent verdicts on the same disputed facts. As such, the Court concludes that Plaintiffs have a substantial right to have these same disputed facts determined by the same jury and that, as a result, there is no just to delay an appeal of the dismissed claims. *See, e.g.*, *Shearon Farms Townhome Owners Ass'n II v. Shearon Farms Dev., LLC*, 272 N.C. App. 643, 647 (2020) ("[W]hen the same fact is determinative of the same issue in multiple claims, there is a substantial right to have those factual issues determined by the same jury to avoid the risk that two juries decide that fact differently, leading to two judgments from the same initial lawsuit with incompatible outcomes."). Based on the above, the Court further concludes that it would be inefficient and potentially wasteful for the parties and the Court to proceed to trial at this time on Loray's remaining claims against Foss 2014 prior to the resolution of an appeal of the dismissed claims.

79. For each of these reasons, therefore, the Court concludes that there is no just reason to delay an appeal of the Court's dismissal of Plaintiffs' claims against Foss and Foss 2014 and thus that the Court should certify its rulings dismissing those claims herein as a final judgment as to those matters under Rule 54(b).

## V.

## CONCLUSION

80. **WHEREFORE**, for the reasons set forth above, the Court hereby **ORDERS** that Defendants' Motion is **GRANTED in part** and **DENIED in part** as follows:

   a. The Motion is **DENIED** as to Loray's claims for breach of contract and breach of the covenant of good faith and fair dealing against Foss 2014.

   b. The Motion is **GRANTED** as to all claims against Foss and all other claims against Foss 2014, and those claims are hereby **DISMISSED** with prejudice.

81. For the reasons also set forth above, the Court, in the exercise of its discretion, hereby certifies its rulings herein granting Defendants' Motion and dismissing Plaintiffs' claims against Foss and Foss 2014 (except for Loray's claims against Foss 2014 for breach of contract and breach of the covenant of good faith and fair dealing) as a final judgment as to those matters under Rule 54(b).

**SO ORDERED**, this the 11th day of January, 2022.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge